Commonwealth *vs.* Craig Yelle.

Hampden.   December 19, 1984. — March 12, 1985.

Present: Smith, Kaplan, & Warner, JJ.

*Evidence,* Relevancy and materiality, Other offense, Admissions and con-
fessions. *Practice, Criminal,* Appeal, Presence of defendant, Instruc-
tions to jury, Conduct of prosecutor.

At the trial of a rape case in which the only contested issue was whether the
complainant, who had accepted the defendant's offer of a ride in his
truck, had subsequently consented to sexual intercourse with the defend-
ant, there was reversible error in the admission of testimony that about
twenty minutes before giving a ride to the complainant, the defendant
had offered a ride to a young girl, who had refused it, and that the girl's
mother had reported the incident to the police. [466-472]

A delay of fourteen months in furnishing a trial transcript to a defendant after
his conviction, which was reversed on appeal to this court, did not, in
the circumstances, require dismissal of the indictments against him.
[472-473]

In the circumstances, a criminal defendant's temporary absence from the
courtroom when the jurors returned from their deliberations to ask a
question amounted to a waiver of his right to be present at this proceeding.
[474-475]

The defendant in a rape case was not prejudiced by the judge's failure to
instruct the jury that they should draw no adverse inferences from a
kidnapping indictment which had been mentioned at the start of trial
and which had subsequently been dismissed. [475]

There was no merit to a criminal defendant's contentions that certain state-
ments made by the prosecutor during trial were intentionally misleading
and that a statement made in closing argument amounted to an improper
expression of the prosecutor's personal belief that the defendant was
guilty. [475]

At the trial of a rape case, there was unfairness in the prosecutor's cross-ex-
amination of the defendant about the age of a young girl to whom he
had offered a ride some twenty minutes before giving a ride to the
complainant. [475-476]

Indictments found and returned in the Superior Court De-
partment on April 16, 1982.

The cases were tried before *Eileen P. Griffin*, J.

*William C. Newman* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. We are obliged to reverse judgments of conviction of rape (G. L. c. 265, § 22[*b*]) and of related assault and battery (G. L. c. 265, § 13A)[1] because of overreaching by the Commonwealth, objected to by the defense, but allowed, unchecked, by the judge. As will appear, the overreaching consisted of the introduction by the Commonwealth of evidence of an incident that occurred before the episode in suit which added no or at best only minimal probative value to the Commonwealth's case, but at the same time was calculated to create unfair prejudice against the defendant.

1. *Prejudicial error.* (a) The complainant and the defendant told different stories from the witness stand, but there was no question that Yelle was the man involved and that intercourse had occurred; the issue was whether the woman was or was not consenting.

On April 13, 1982, around 8:00 A.M. on a cloudy, cold day, the defendant, driving a white truck on Berkshire Avenue in Springfield, offered a ride to the complainant, who was waiting for a bus near Myrtle Street and St. Matthew's School. According to the complainant, she recognized the defendant although she could not exactly place him, and thus she accepted the lift; the defendant said she was a stranger to him. Her destination that morning was the Federal Building downtown, where she intended to do her taxes before going on to her job. The two conversed about a number of things as they went along. At some point, explaining the scars under his chin, the defend-

---

[1] The defendant was convicted also of possession of marihuana and of possession of marihuana in hashish form with intent to distribute, but the convictions were placed on file with the defendant's consent. See *Commonwealth* v. *Gallison,* 384 Mass. 184, 185 & n.3 (1981). An indictment for kidnapping was dismissed at the close of the Commonwealth's case, thus reducing an indictment for aggravated rape to rape.

Besides the appeal from the two convictions mentioned in the text, there is an appeal from the denial of a postconviction motion to dismiss the indictments for alleged breach of the defendant's right to speedy appeal.

ant spoke of a fire at school in 1975, which brought in the name of a woman also known to the complainant. He says he mentioned his full name; the complainant heard only "Craig." The complainant had it that the defendant said they would cut through Blunt Park; they did so and — to her surprise — went down a side road and stopped. The defendant said he had asked the complainant to roll a joint, but she "didn't roll too good," and so, entering the park, he stopped the truck on the side road in order to do the joint and enjoy a smoke with the complainant. She said he asked if she wanted to smoke a joint and she said no; there was no business of rolling a joint. At any rate, just after parking the truck the defendant said he had to urinate, and he did so off to the side.

At this moment the complainant became apprehensive, and she said her fears were realized when the defendant, returning to the truck, tried to kiss her and finally used force, over her protests and such physical remonstrance as she could make, to pull down her slacks and have intercourse with her. The defendant related that, after entering the truck and rolling the joint, he found the complainant unwilling to smoke because it might interfere with her work later that morning. She showed her acquiescence in what followed by lying back and saying that despite the scars he was a good looking man. After some dalliance they had intercourse. She testified that, trying to discourage the defendant from his purpose, she pointed to a pimple on her right thigh, covered by a bandaid, as a mark of a venereal infection. He said she removed the bandaid and simply asked him to avoid bruising the pimple. It is agreed that before quitting Blunt Park the defendant offered the complainant an ointment that he happened to have, which she in fact applied to the sore. On the prescription label was the defendant's full name; upon which, the complainant says, she fixed her memory. They smoked her cigarettes for five minutes and then drove without incident to the Federal Building, where she was left off. She testified that she made no outcry or attempt to break away during this ten or fifteen minute journey and made it appear that the experience was "no big deal" because she feared what he might do. The testimony agrees

that he had earlier asked for her telephone number but she refused, saying she had a boyfriend. He said that at parting she indicated he could get in touch with her at her place of work; he then told her again his full name. The complainant's testimony does not agree.

Entering the Federal Building, the complainant was weeping and talking uncontrollably (evidence of lack of consent, the Commonwealth suggested; a self-protective put-on, according to the defendant, in case her boyfriend or family should get wind of the episode). She was led to a security officer and said she had been raped. She wrote down the defendant's name and called her mother. Shortly, she and her mother were driven to a hospital, and thence to Blunt Park and to the police station.

Before noontime, the defendant had been apprehended. A pillbox belonging to the complainant was found in the defendant's pocket. He said she gave it to him; she said it must have dropped from her purse and fallen to the floor of the truck.

(b) The foregoing sketch of testimony at trial confirms what was the issue: consent. We have now to deal with the evidence received over objection.

Just before the opening statements, the defense moved in limine to bar testimony for the Commonwealth about an event on Berkshire Avenue perhaps twenty minutes before, and one mile distant from, the defendant's encounter with the complainant: the defendant in the white truck had offered a ride to a young girl, which she refused.[2] In answer to the argument that

___

[2] The encounter with the young girl was at or near the intersection of Berkshire Avenue and Superior Avenue. The defendant said he then drove home (eastward), a short distance away, on Worcester Street; ate a half sandwich there; then went back (westward) on Berkshire Avenue, very shortly picking up the complainant about the Myrtle Street intersection. Continuing (westward) on Berkshire one would again pass the spot at Superior.

According to the defendant, he told the complainant he was going to Beaulieu Chevrolet in downtown Springfield (where he worked sporadically); she said he could drop her off at the Springfield Technical Community College. The complainant testified that the defendant said he was going to STCC, he was a student there. On cross-examination the defendant said he had last gone to STCC in 1978 when he got his GED diploma. The defendant did not get to Beaulieu that morning.

evidence on this line would be only inflammatory, the Commonwealth said it would help to identify the defendant. The defense answered that identification was conceded and was not an issue. The Commonwealth contended, further, that the evidence would bear on the complainant's consent (this was not explained) and would show how the police had been assisted in their work, as the incident had been reported to them by the girl's mother (how this connection, if true,[3] was a ground for admitting the testimony, was not explained). The judge denied the motion to exclude. She remarked that the evidence was relevant and not "unduly" prejudicial.

Defense counsel in his opening statement to the jury, immediately following the Commonwealth's, expressly conceded identification.

In midtrial, as part of its case in chief, the Commonwealth called the mother of the young girl in the earlier incident. She testified that she had five daughters ranging in age from twenty-two to thirteen. About 7:45 A.M. on April 13, while driving home on Berkshire Avenue, she saw a white truck stopped alongside her youngest daughter, who was on her way to school. She saw the driver speak to the girl. As the mother drove up to the truck, the truck pulled away to the nearest stop signal. On learning that the driver had offered the girl a ride, which she had declined, the mother reprimanded the girl for "speaking to a stranger." Arriving home, the mother wrote down the plate number of the truck, which she had observed as the truck paused at the stop. She informed the police (see n.3) and an officer appeared that evening to interview mother and daughter.

After the mother's testimony, the defense, we may surmise, could not simply pass over the incident as irrelevant, and the defendant in his direct testimony confirmed his offer of a ride to the girl. This drew cross-examination. How old was the little girl he offered a ride to? No idea, he said, perhaps seven-

---

[3] It may be noted that it appeared at argument on the postconviction motion that a police report indicated the call from the mother came at 2:45 P.M., a few hours after the defendant had been arrested (see point 2[e] below).

teen or eighteen. Could she have been twelve? Any age, he said, between twenty and fourteen or whatever. Could she have been nine? No. He imagined she was going to the JFK junior/senior high school. Then perhaps twelve to fourteen. She was alone? — suggesting that that made her a target.

The direct and cross-examination riveted attention on an incident anterior to the matter truly at bar. It added very little, if anything, to the proof on that matter. In its brief on this appeal, the Commonwealth does not argue that the material was admissible as probative on consent, the issue in the case. Surely it did not furnish proof of whether the complainant was in fact consenting. It had no, or at most only very remote bearing on whether the defendant would or would not be deterred from intercourse by a woman's refusal to consent. The Commonwealth contends that the evidence could be received simply as testing the defendant's credibility, but, as noted, the incident was injected into the trial as part of the Commonwealth's case; furthermore, to accept a test-of-credibility justification would be to give the Commonwealth an unbounded roving commission. (We assume the Commonwealth does not mean that the incident could be put in, like proof of a defendant's prior criminal record, to impeach "credibility." See *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 570 [1982]). At oral argument the Commonwealth made a final effort to justify the reception of the evidence as serving a material probative purpose: the defendant indeed conceded identification in limine, but, said the Commonwealth, had it, relying on that assurance, forgone proving the incident, then there might have been a lack of evidence of identification when the Commonwealth rested, and that would have invited the defendant to turn around and move for a required finding. The argument is extreme. Not only had the defendant's opening statement to the jury again conceded the point; in fact the Commonwealth in the natural presentation of its case in chief established that the defendant was the man involved without benefit of the incident, e.g., by the complainant's selection of the defendant's picture. Upon the rather wild assumption that the defense would have been permitted to abandon its concession, leaving a deluded

Commonwealth with inadequate proof when it rested, we suppose the judge would surely have allowed the Commonwealth to reopen its case and prove the necessary. See *Commonwealth* v. *Ierardi,* 17 Mass. App. Ct. 297, 303 (1983). Cf. *Commonwealth* v. *Cote,* 15 Mass. App. Ct. 229, 241-242 (1983).

If the probative increment achieved by introducing the incident was nugatory or nearly so, its prejudicial potential and probable impact were considerable. There was an effort to picture the defendant either as a molester of children or a rapist on the prowl for victims, or both. The Commonwealth observes with a naiveté approaching disingenuousness that since "[i]t does not necessarily follow that any one who offers a girl a ride at 7:45 A.M. intends to molest her," the evidence was of a "neutral act," not a "prior bad act." This is to ignore the calculated manner of the presentation of the evidence on direct and cross-examination and the context in which the evidence was placed. We should add that the Commonwealth does not argue, nor could the argument hold, that the defense was duty bound to seek an instruction from the judge that might mitigate the prejudice; quite apart from the fact that the judge had ruled the incident admissible and persisted in the ruling, the defense could well reason that any instruction was likely to aggravate the damage. See *Commonwealth* v. *Whitehead,* 379 Mass. 640, 661 (1980).

(c) There is no suggestion that the evidence in question could be admitted to prove a modus operandi (which, incidentally, usually goes to identification). Nor was it admissible on a theory that it showed "the whole transaction of which the crime was a part" and so might "aid the jury in reaching a verdict by giving them the complete picture." *Commonwealth* v. *Durkin,* 257 Mass. 426, 428 (1926). That theory cannot apply where the circumstances of the alleged crime are not rendered "unintelligible if the references to [the earlier incident are] omitted." *Commonwealth* v. *Brown,* 389 Mass. 382, 385 (1983). Cf. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269-270 (1982).

To conclude on this entire point. Evidence of prior misconduct — "prior bad acts" — not offered solely for the prohibited

purpose of proving bad character (and thus, inferentially, a "propensity" toward crime) is admissible if "substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it . . . ." *Harper* v. *United States,* 239 F.2d 945, 946 (D.C. Cir. 1956), quoted in *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct. 1, 2-3 (1972). The present case belongs in the second category; but if the judge had any discretion about admitting such evidence, she abused it: the prejudice was "undue." The circumstances of the present case make a stronger case for the rejection of the evidence than appears in the well-known decisions involving sex offenses where prior bad acts have been properly excluded. See, e.g., *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964) (limiting *Commonwealth* v. *Machado,* 339 Mass. 713, 715 [1959]); *Commonwealth* v. *Coviello,* 7 Mass. App. Ct. 21, 26 (1979). See generally Liacos, Massachusetts Evidence 420 ff. (5th ed. 1981 & 1983 Supp.); Lempert & Saltzburg, A Modern Approach to Evidence 215-231 (2d ed. 1982). Nor is there anything in the circumstances of this case that raises any of the special questions of admission of evidence of more-or-less unrelated misconduct on which there has lately been some division of opinion. See *Commonwealth* v. *Gallison,* 383 Mass. 659, 672-674 (1981); *Commonwealth* v. *King,* 387 Mass. 464, 469-472 (1982); *Commonwealth* v. *Sylvester,* 388 Mass. 749, 753-758 (1983). Here the error was palpable.

2. *Other matters.* (a) Delay in furnishing transcript. Counsel preparing the defendant's appeal received the last installment of the transcript fourteen months after his request for all of it. It happened that three stenographers had been used at the trial. Two turned in their work by February, 1984, and it was noticed about that time that there was a third; an order went to her in March, but for personal reasons she did not deliver her installment until July. The clerk's office is not chargeable with deliberate delay. In deciding to deny a motion to dismiss the indictments for breach of the defendant's right to a speedy trial,

the judge said there had been no prejudice to the defendant's appeal. A claim of prejudice with respect to parole remains obscure.

The question of prejudice to a defendant's appeal may not be the only consideration where a conviction is reversed and the case stands for retrial with a chance that the conviction may be finally overthrown. *Williams, petitioner,* 378 Mass. 623, 626 (1979). Cf. *Commonwealth* v. *Duhamel,* 391 Mass. 841, 847 (1984). But on the whole, considering the length of the delay, its cause, its effect on the defendant, and the degree of responsibility or fault that can be charged to the Commonwealth, we think the judge's order was right. See *Commonwealth* v. *Swenson,* 368 Mass. 268, 279-280 (1975); *Williams* at 627; *Duhamel* at 846; *Commonwealth* v. *Lee,* 394 Mass. 209, 220-221 (1985).

(b) Treatment of "confession." The defendant on direct examination testified to physical and verbal abuse by the police from the time of his arrest through his trip to the police station, his stay in an interrogation room, and possibly beyond. The defendant said he was "pretty well dizzy. . . . My head was spinning from all the punches I received." This charge of abuse — denied root and branch by the police — was given a superficial if perhaps unfair plausibility by the fact that the complainant was the daughter of a detective known to the officers accused of the misconduct.

Under cross-examination, the defendant said he did not recall talking to one of the officers. This officer was called as the sole witness for the Commonwealth on rebuttal and testified that the defendant had spoken to him and had tearfully protested: "You people don't understand that a girl can make a guy do this. . . . All that violence on TV, it's the violence on TV that can make a guy do this."[4]

There was no defense objection to the officer's statement, either as improper rebuttal (consider *Drake* v. *Goodman,* 386

---

[4] A claim of ineffective assistance of defense counsel is based on counsel's failure to move to suppress this statement, and on other asserted faults. On the appeal record itself, we think the claim cannot be sustained.

Mass. 88, 92 [1982]), or for any other reason, but the defense now argues that the judge should have viewed this as tantamount to evidence of an admission or confession by the defendant and proceeded to hold a voir dire on the spot to test whether he was overcome at the time by police abuse which might have made the confession "involuntary." What the judge did (actually at the Commonwealth's request) was instruct the jury to consider whether the defendant made the statement, and if he did, whether it was voluntary.[5] Whether, in the circumstances, no advance warning having been given her, the judge was bound on her own motion to halt the trial and conduct a voir dire according to the "humane practice" of *Commonwealth* v. *Tavares,* 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982), we need not decide; surely it would have been better for her to have done so. Upon retrial, the problem will be known to all and arrangements may be made ahead of time to take care of any eventuality.[6]

(c) *Defendant's temporary absence from trial.* The defendant was absent from the courtroom when, shortly after the jury retired, they returned with a question. It appeared upon the postconviction motion that an effort was made to find the defendant. The defendant was "entitled to be present at all critical stages" of the trial. Mass.R.Crim.P. 18(a), 378 Mass. 887 (1979). However, his absence "without cause or without leave of court," Mass.R.Crim.P. 18(a)(1), was a waiver, see *Commonwealth* v. *Kane, ante* 129, 134-135 (1984), as the judge may be assumed to have found, see *Commonwealth* v. *Lanoue,*

---

[5] The instruction (to which the defendant did not object) omitted to say that the burden was on the Commonwealth to show beyond a reasonable doubt that the defendant had spoken voluntarily. There was a later instruction on the Commonwealth's general burden of proof, but a specific instruction was preferable and perhaps necessary.

[6] We add that the Commonwealth is wrong to suggest that, because the judge submitted the question to the jury, she must implicitly have found on her own part that the defendant's "confession" was voluntary. Such an inference might be made if the voluntary character of the confession "appear[ed] from the record with unmistakable clarity," *Commonwealth* v. *Tavares,* 385 Mass. at 152, quoting from *Sims* v. *Georgia,* 385 U.S. 538, 544 (1967), but that is not the present case.

392 Mass. 583, 586 n.2 (1984). Thus the proceeding could go on in the defendant's temporary absence.

(d) *Instruction on dismissal of an indictment.* The jury's return to the courtroom was to ask the judge what had happened to an indictment for kidnapping that had been mentioned at the start of trial but did not figure in the instructions. "I should have told you," said the judge, "that charge is no longer before you. The court has made a finding that the evidence did not warrant submitting the charge . . . before the jury." Defense counsel did not object, but there is argument now that the judge should have added, in effect, that no adverse inferences should be drawn as to the remaining charges against the defendant. Such an instruction would have been proper and advisable, see *Commonwealth* v. *Pasciuti,* 12 Mass. App. Ct. 833, 840 n.7 (1981), but, especially in light of the decision of this appeal, no prejudice appears.

(e) *Conduct of prosecutor.* Opposing the defendant's motion in limine, the prosecutor said that the mother of the girl to whom the defendant had offered the ride "called the police as soon as she got home and relayed the license plate number to them." At trial, the mother testified, "I drove home and I wrote [the plate number] down as soon as I got into the house and called and reported it." The defendant charges the prosecutor with misleading the court in suggesting that the witness called in immediately, thus assisting the police in some material way, when in fact a police report showed that her call came at 2:45 P.M. (see n.3). There is no reason to think the prosecutor knew of the police report when she addressed the court. The misstatement (if we accept that the police report was accurate) seems to have resulted from ambiguity in the witness's story, not from a purpose to deceive. Compare S.J.C. Rule 3:08, PF 1, as appearing in 382 Mass. 798 (1981).

There is a further claim of prosecutorial misbehavior in the tendentious cross-examination of the defendant about the age of the young girl to whom he had offered a ride. We are holding that the entire incident was erroneously admitted, but the prosecutor must be given the benefit of the judge's contrary

ruling. Nevertheless, even accepting any theory on which the prosecutor sought (erroneously) to defend admissibility, her harping on the age of the girl, with all that that implied, was unfair. Cf. *Commonwealth* v. *Smith,* 387 Mass. 900, 904-905 (1983); *Commonwealth* v. *Clary,* 388 Mass. 583, 592 (1983). The point will not arise again on retrial.

In her closing statement the prosecutor said that she was bound by her oath to be interested in justice, not convictions. This corresponds to the law, see *Commonwealth* v. *Smith,* 387 Mass. at 905; the objection must be that the statement implied she would not have undertaken the prosecution unless she believed that justice called for a conviction, and this she believed because she believed the defendant was guilty. But she was forbidden to express any belief on her part that the defendant was guilty. *Id.* at 906. We doubt the jury would read all this into the statement, especially as the prosecutor seemed merely to be responding to defense counsel's overheated observation that the police "work hand in hand with the District Attorney's office, they have an interest in getting a conviction." See *Commonwealth* v. *Burke,* 373 Mass. 569, 576 (1977).

The order denying the motion to dismiss the indictments is affirmed. The judgments are reversed and the verdicts set aside.

*So ordered.*