COMMONWEALTH vs. JACK T. FLEURY-EHRHART.

Berkshire. March 14, 1985. — July 23, 1985.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Evidence,* Intent, Other offense, Cross-examination, Judicial discretion. *Witness,* Impeachment. *Practice, Criminal,* Argument by prosecutor, Motion to suppress.

At the trial of an indictment charging indecent assault and battery, based upon the alleged misconduct of the defendant, a medical doctor, in the performance of a routine pelvic examination on a woman patient, evidence of prior misconduct by the defendant toward two other women patients which had been similar to the criminal behavior for which the defendant was being tried was properly admissible, in the judge's discretion, to establish a common scheme, a pattern of conduct, absence of accident or mistake, intent or motive. [430-432]

At the trial of an indictment charging indecent assault and battery, based upon the alleged misconduct of the defendant, a medical doctor, in the performance of a routine pelvic examination on a woman patient, the judge did not abuse his discretion in admitting, for impeachment purposes only, testimony elicited by the prosecutor during cross-examination of the defendant to establish that on direct examination he had not fully disclosed to the jury the reason why, some years earlier, he decided to leave a developing practice in another town. [432-434]

It lay within the discretion of the judge at a criminal trial to permit wide latitude in the questioning of the defendant on cross-examination, especially where the credibility of the defendant was in issue. [434-435]

Closing argument by the prosecutor at a criminal trial did not go beyond the inferences that could be drawn from the evidence and, in view of instructions by the judge, presented no prejudice to the defendant. [435-437]

Upon review of the record of a trial of a medical doctor on a criminal charge, this court found nothing which would cause it to conclude that the Commonwealth's use of the doctor's personnel file to impeach certain testimony he had given concerning his professional career might have created a substantial risk of a miscarriage of justice. [437-438]

INDICTMENT found and returned in the Superior Court Department on July 5, 1984.

The case was tried before *John L. Murphy, Jr.,* J.

*Gerald Alch (Ralph Cianflone, Jr.,* with him) for the defendant.

*Lee Diane Flournoy,* Assistant District Attorney (*Anthony J. Ruberto, Jr.,* District Attorney, with her) for the Commonwealth.

BROWN, J. The defendant appeals from his conviction of indecent assault and battery on a person who has attained the age of fourteen years. See G. L. c. 265, § 13H. The indictment was based upon the alleged misconduct of the defendant, a medical doctor, in the performance of his specialty of obstetrics and gynecology. Focusing only on such facts as are relevant, we address, in turn, each of the principal claims of error raised on appeal.

1. *Evidence of Similar Misconduct.*

Prior to allowing two prosecution witnesses to testify about the defendant's behavior towards them which had been similar to the criminal behavior for which the defendant was being tried, the judge instructed the jury that the testimony of the two witnesses was "not to be considered in any way as to the propensity of this [d]efendant to commit any crime. It's limited — the testimony is limited to the question of intent — which is a part of the case — a plan, or the absence of mistake or error."

Evidence of other criminal behavior may not be admitted to prove the propensity of the defendant to commit the offense for which he is being tried, "but it is admissible for other relevant probative purposes." *Commonwealth* v. *Gallison,* 383 Mass. 659, 672 (1981). *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). In general, such evidence is competent where it has a tendency to show a common scheme, a pattern of operation, absence of accident or mistake, intent, or motive. *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979), and cases cited. See also *Commonwealth* v. *Campbell,* 371 Mass. 40, 43 (1976) (evidence of past, similar crimes properly admitted); *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979). Once it is determined that evidence of other criminal behavior has probative value, the judge in his discre-

tion must decide whether the probative value of such evidence outweighs the risk of undue prejudice. See *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. 465, 471-472 (1985).[1]

Contrary to the defendant's contention, the evidence of other criminal behavior had some legitimate probative force. The two witnesses were women patients who had visited the defendant's office for routine pelvic examinations as part of their medical care. Each witness testified that, like the victim, she was given a clitoral massage by the defendant while lying on her back, draped only in a sheet and with her feet in stirrups. Each incident took place in the "left" (as opposed to the right) examining room with a nurse present, taking notes. This evidence tended to show a pattern of conduct or modus operandi.[2] *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982). The judge could reasonably have concluded that, without such evidence, the alleged incident "could have appeared to the jury as an essentially inexplicable act." *Ibid.* There was no unfair prejudice.

Indeed, it is evident from the entire record that this case falls within the line of cases recently decided by the Supreme Judicial Court allowing admission of prior criminal behavior to show the defendant's intention and pattern of conduct. In this regard, see, e.g., *Commonwealth* v. *King,* 387 Mass. 464, 469-472 (1982), and *Commonwealth* v. *Gallison,* 383 Mass. at 672-674, which have particular relevance. See also *Commonwealth* v. *Sylvester,* 388 Mass. 749, 753-758 (1983).

---

[1] "Evidence of prior misconduct — 'prior bad acts' — not offered solely for the prohibited purpose of proving bad character (and thus, inferentially, a 'propensity' toward crime) is [1] admissible if 'substantially relevant to the offense charged; [2] inadmissible when its relevance is insignificant; and, [3] in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it . . . .' " (citations omitted). *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. at 471-472.

[2] The evidence also was relevant to the question of accident or inadvertence. See *Commonwealth* v. *Campbell,* 371 Mass. at 42-43. The defendant gave pretrial notice of a defense theory of accident; he attempted to develop and advance that theory on cross-examination, in his own case, in closing argument, and by requests for jury instructions.

In *Commonwealth* v. *Gallison,* the court stated that evidence of the defendant's abuse of her three year old son was probative of her state of mind at the time of her daughter's death. 383 Mass. at 666, 672. The court reasoned that such evidence indicated that the defendant was in a reckless and wanton state of mind as to the physical well-being of both her son and daughter and thus served to refute the possibility that the daughter's death came about "through accident, mistake, or inadvertence." 383 Mass. at 673.

In *Commonwealth* v. *King* the court noted that both victims lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age, and the form of sexual conduct (oral sex and use of a dog) was similar. 387 Mass. at 472. Here, as in *King,* the evidence of the defendant's behavior toward the two other patients was sufficiently related in time and location to be logically probative.

The principal case relied on by the defendant, *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964), is distinguishable, as are *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947), and *Commonwealth* v. *Coviello,* 7 Mass. App. Ct. 21, 26 (1979). For an instructive analysis of cases involving sex offenses where prior bad acts have been properly excluded, see *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. at 472.

2. *Impeachment.*

The Commonwealth attempted to establish that on direct examination the defendant had not fully disclosed to the jury important matters concerning his professional career during the period between 1970 and 1981. Inquiries regarding that period brought out that the defendant had practiced obstetrics and gynecology in Greenfield, Massachusetts, from 1973 to 1979. The inquiries also brought out that after leaving Greenfield the defendant went to Syracuse, New York, to begin a postgraduate fellowship in maternal fetal medicine, but stayed for only approximately one month. The defendant's testimony also indicated that for the remainder of that period (1979 to 1981) he was associate medical director of the The Travelers Insurance Company in Hartford, Connecticut. When asked

why he left Greenfield, the defendant responded that he "felt it was time for a change in [his] career." After a bench conference concerning the Commonwealth's use of information in the personnel file of the defendant, further cross-examination brought out that the executive committee of the Franklin County Public Hospital in Greenfield decided not to renew the defendant's hospital staff privileges. The defendant testified that the decision of the committee was based on "an allegation of having abused a patient in my practice in Greenfield."

The defendant asserted two distinct bases for exclusion of the questions concerning Syracuse as well as his loss of staff privileges at the Franklin County Public Hospital. An objection based on "[r]elevancy and materiality" grounds was overruled because the judge determined that the questions were properly within the scope of cross-examination.

The other objection was based on the defendant's contention that these matters were "remote in time and place" from the instant circumstances and that this was merely "a roundabout effort to get in evidence of prior bad acts."[3] Compare *Commonwealth* v. *Roberts,* 378 Mass. 116, 127 (1979). In overruling that objection, the judge, in part, stated that the defendant "gave a reason why he left [Greenfield], and it's a question of credibility, if [the Commonwealth has] the material that shows he left for some other reason [it is] entitled to go into it."

The defendant has several prongs to his argument that the judge erred in admitting this impeachment testimony in evidence. Our disposition of this issue, however, makes it necessary for us to discuss only two of those prongs.

(a) Asserting that evidence elicited on cross-examination was in the nature of prior bad acts, the defendant claims that the probative value of the testimony was outweighed by its prejudice. Moreover, he argues that the testimony was particularly unfair because it came after evidence of other bad acts,

---

[3] To the cynical eye, such a maneuver could appear to be the so called classic "cheap shot" — a tactic "'designed not to impeach the defendant's credibility but to establish substantively the defendant's propensity for' . . . a particular crime." *Commonwealth* v. *Denson,* 16 Mass. App. Ct. 678, 683 (1983), quoting from *Commonwealth* v. *Roberts,* 378 Mass. 116, 127 (1979).

similar to the one for which the defendant was on trial, had been admitted as part of the Commonwealth's case-in-chief. It is settled that the extent to which the veracity and credibility of a witness may be tested on cross-examination "rests largely in the sound discretion of the trial judge, and his action, where as here no abuse of discretion is shown, is final." *Commonwealth* v. *Shea,* 323 Mass. 406, 417 (1948). See *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952).

We discern no legal or factual basis for reversal on this ground.[4] No details of any bad acts in Greenfield were admitted or revealed through the Commonwealth's inquiries. Even if we were to assume that the evidence could have made the jury aware that the reason the defendant left Greenfield might have been because of problems he had as a result of other bad acts similar to those for which he was on trial, that does not, by itself, render the evidence more prejudicial than probative. See *Commonwealth* v. *Bradshaw,* 385 Mass. at 270. The impeachment evidence tended to cast doubt on the defendant's credibility because it created a basis from which the jury might infer that because the defendant's testimony as to why he left Greenfield was not accurate, other portions of his testimony also might be inaccurate. The defendant's contention that the crime simply did not occur necessarily pitted his credibility against that of the victim. In these circumstances, the judge could reasonably determine that the prejudice which might be generated by the admission of this impeachment testimony would not be outweighed by its probative value. Hence the judge did not abuse the discretion afforded him to permit "great breadth of inquiry." *Commonwealth* v. *Smith,* 329 Mass. at 479.

(b) The defendant contends that the judge used an inappropriate standard in the exercise of his discretion. During the bench conference regarding the scope and nature of the cross-examination as to the reasons why the defendant left Greenfield the judge indicated that so far as cross-examination was concerned, he would permit very wide latitude, and would not

---

[4] We note in passing the absence of any citation of authority in support of this claim of error.

"restrict it unless it gets *extremely unfair* and gets out of order" (emphasis supplied). The comment came in response to the defendant's inquiry regarding the extent to which the Commonwealth would be allowed to go into the defendant's personnel file, which the court had already ruled could be used for impeachment purposes.

The defendant asserts that the judge misconceived the standard for limiting the cross-examination. See *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct. 1, 3 (1972). He argues that the limit should have been set at mere unfairness and not enlarged to extreme unfairness. Upon examination of the record, reversal is not warranted, as the judge's actions were within his breadth of discretion in allowing cross-examination, especially where the credibility of the witness was in issue. See *Commonwealth* v. *Alicea,* 376 Mass. 506, 522 (1978), and cases cited. In any event, even under the standard the judge purportedly used, we do not think that the defendant was unfairly prejudiced.

3.  *Closing Argument.*

"The proper scope of a prosecutor's closing argument may be simply summarized: counsel may argue as to the evidence and any inferences that may be drawn from it." *Commonwealth* v. *Francis,* 391 Mass. 369, 372 (1984). "Counsel has the right to argue inferences from the evidence favorable to his case, and the precise form should not control unless it tends to lead the jury to an improper inference not from the evidence but from the apparent personal knowledge of the attorney." *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973).

The defendant claims that the Commonwealth emphasized that the reason he left his Greenfield practice was not for his claimed "change in career" but rather because of the sexual abuse complaints lodged against him in Greenfield and the resulting revocation of his hospital privileges. The defendant notes that immediately after emphasizing that there was another reason why the defendant left Greenfield, the prosecutor stated:

> "Well, he's going to Upstate Medical [Syracuse], take some more courses, teach or do whatever he was going to do at Upstate Medical, and he lasts there two-three-

four weeks. They [the defendant] didn't want to tell you about that."[5]

The defendant asserts that this "remark was completely unsupported and unwarranted by the evidence; for it carried with it, in the context of the case, a clear invitation to the jury to infer, or conclude that the [d]efendant was concealing still additional sexual misconduct of some sort during his one-month stay in Syracuse."[6]

An examination of the entire record, however, does not indicate that the Commonwealth emphasized that the defendant left Greenfield because of sexual abuse complaints lodged against him and revocation of his privileges. All that the prosecutor did was state that there was a reason other than the claimed "career change" why the defendant left Greenfield after developing a practice there for six or seven years. There was no use of the words "sexual abuse" in the closing argument.[7] While the jury might nevertheless have inferred that the defendant left Greenfield because complaints of sexual abuse precipitated the revocation of his hospital privileges, the record indicates that the jury were adequately instructed that the specific testimony regarding Greenfield was to be considered solely on the issue of the defendant's credibility.[8]  See

---

[5] Again, we have an instance where an unfortunate remark generated another needless appellate issue. It cannot be gainsaid that a prosecutor should avoid "sail[ing] unnecessarily close to the wind." *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976).

[6] "We recognize that in certain circumstances a prosecutor may deliver 'a hard blow' [citation omitted], but we think that all blows must be delivered fairly. It cannot be said too often that the Commonwealth must 'take care to behave itself' " [citation omitted]. *Commonwealth* v. *Felton,* 16 Mass. App. Ct. 63, 66 (1983).

[7] The defendant claims that the jury were told that he was accused of "sexually abusing" a patient in Greenfield. This contention, however, is not borne out by the record. The word "sexual" was not referred to in closing argument, nor did the prosecution use it on cross-examination.

[8] Significantly, after two days of deliberation, the jury returned with a question regarding the extent to which they could "use the testimony about the Greenfield incident." The judge responded that the jury were not to consider the Greenfield allegations as part of any common scheme or plan, but rather they could consider them on the issue of the defendant's credibility.

*Commonwealth* v. *Toro,* 395 Mass. 354, 357 (1985) (the judge may ameliorate possible prejudice by instructing the jury concerning the purpose for which the evidence is admitted).

When the Commonwealth asked the defendant where he went after leaving Greenfield, the reply skipped over Syracuse. It took a second question to elicit any information about Syracuse. Thus, the inference that the defendant did not want to tell about Syracuse was warranted. Moreover, this inference was pertinent to the issue of the defendant's credibility because his short stay in Syracuse might have suggested that the reason he went there was not for a career change as he indeed claimed but for some other reason. Although the remark would have been better left unsaid, it was not improper when viewed in context.[9] Compare *Commonwealth* v. *Francis,* 391 Mass. at 372-373. The jury properly could have given the defendant's testimony less weight than they might have given it if the Syracuse stay had not been so short. In any event, we are persuaded that any implication that might have been conveyed by the prosecutor's comment "'could have had but little practical effect on the jury." *Commonwealth* v. *Bradshaw,* 385 Mass. at 274, quoting from *Commonwealth* v. *Roberts,* 378 Mass. at 123. See also *Commonwealth* v. *Francis,* 391 Mass. at 373, and cases cited.

4. *Motion to Suppress.*

The defendant contends that the trial judge erred in denying his motion to suppress the contents of his personnel file. The motion was not filed until the day of the trial, October 15, 1984. The affidavit in support of the motion indicates that as of September 12, 1984, the defendant knew that his personnel file was in the possession of the Commonwealth and that he was aware of a significant portion of its contents. Accordingly, the trial judge within his discretion could have denied the motion as untimely because it did not satisfy the time requirements of

---

[9] As officers of the court, defense counsel and prosecutors alike should never forget that it is "ultimately the public who bears the additional and unnecessary expense of a new trial when [counsel's] transgressions constitute prejudicial error." *Commonwealth* v. *Hogan,* 12 Mass. App. Ct. 646, 654 (1981).

Mass.R.Crim.P. 13(d)(2)(A), 378 Mass. 873 (1979). See *Commonwealth* v. *Bailey,* 370 Mass. 388, 397-398 (1976). See also *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 507 (1983).

The judge, however, deferred ruling on the motion, stating, "I will wait until I see what the materials are. If you insist upon a decision at this time, it would be denied. But I have no idea what's in the file." Later, during a bench conference concerning the use of the material in the personnel file, the Commonwealth reminded the judge that he had deferred ruling on the motion to suppress. At that point the defendant questioned the "relevancy" of some of the information in the file and suggested that its use was merely "a roundabout effort to get in evidence of prior bad acts."

The defendant now asserts on appeal that the Commonwealth, in obtaining his personnel file by subpoena (and using its contents at trial), has intruded upon his reasonable expectation of privacy in violation of the Fourth Amendment. See *Commonwealth* v. *Genest,* 371 Mass. 834, 836 (1977). The defendant cannot assert at the appellate level a ground not brought to the attention of the trial judge. See *Commonwealth* v. *Lovett,* 374 Mass. 394, 403 (1978). In any event, we see nothing in this record which would cause us to conclude that use of those records to impeach might have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Clark,* 378 Mass. 392, 397 (1979). See also *Commonwealth* v. *Lovett,* 374 Mass. at 403.

*Judgment affirmed.*