COMMONWEALTH vs. RICHARD R. CAVALLARO.

No. 86-1345.

Bristol. September 11, 1987. — April 13, 1988.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Instructions to jury. *Evidence,* Other offense.

Where, at the trial of an indictment for operating a motor vehicle while under the influence of intoxicating liquor, the key and disputed issue was whether the defendant was operating the parked vehicle in which he was arrested, the judge's failure to give a clarifying instruction, based on *Commonwealth* v. *Henry,* 229 Mass. 19 (1918), on the issue of operation, when requested by the jury, created a substantial risk of a miscarriage of justice by taking from the jury any consideration of the defendant's legitimate theory of defense. [607-611]

At the retrial of an indictment for operating a motor vehicle while under the influence of alcohol, the judge was to resolve questions of relevance, probative value and possible prejudice if those issues should arise with respect to evidence that might indicate that the defendant had committed another offense. [611-612]

INDICTMENT found and returned in the Superior Court Department on February 27, 1985.

The case was tried before *Frederick V. Gilgun,* J., sitting under statutory authority.

The case was submitted on briefs.

*Ellen A. Howard,* Committee for Public Counsel Services, for the defendant.

*Ronald A. Pina,* District Attorney, *Dana A. Curhan & Cynthia A. Vincent,* Assistant District Attorneys, for the Commonwealth.

PERRETTA, J. At the defendant's jury trial on an indictment charging him with operating a motor vehicle while under the influence of liquor, the key and disputed issue was whether, at

the time of his arrest, the defendant was operating the vehicle. The arresting officer testified that when he arrested the defendant, he was in the driver's seat of his truck. Although the truck was well into a parking lot of a twenty-four hour service station, the engine was running. The defendant testified that he arrived at the service station, went inside the attendant's building, and bought cigarettes. He and the attendant, with whom he was friendly, then went outside, got into the truck, and were there chatting for about forty-five minutes. The engine was not running. During this period, the defendant drank four or five cans of beer. In instructing the jury, the judge stated in critical part that there is "operation" of a vehicle "within the meaning of the law, when . . . [the vehicle] is stopped in the ordinary course of its operation. . . ." In the context of this case, we conclude that the instruction was misleading and, without clarification, created a substantial risk of a miscarriage of justice. We reverse.

I. *The Evidence.*

We recite the evidence more fully. Shortly before 2:00 A.M. on June 11, 1984, Seekonk police officer George Casey drove into the parking lot of the station which he described as "bigger than the average gas station." There were two vehicles in the lot, the attendant's car which was parked close to the building and the defendant's tow truck, which was pulled up to and parallel with the car. The defendant sat behind the wheel, and the attendant was in the passenger's seat. Casey stated that the engine was running and that he had to tell the defendant to turn it off.

In direct contradiction of Casey's testimony, the defendant related that, in the middle of the evening, he had consumed two beers while at home watching television. A little after 1:00 A.M. he drove to the gas station, pulled into the lot, turned off the engine, and went into the attendant's building to buy cigarettes. He began a conversation with the attendant, with whom he was friendly. A short time later, the two went outside and got into the defendant's truck, where the defendant drank beer and they sat talking until Casey's arrival about forty-five minutes later.

To strengthen his assertion that he had not left the engine running throughout this time, the defendant described the weather as hot and humid. This weather and time period would have caused the truck to overheat had the engine been idling while he and the attendant sat and talked. He added that, considering the cost of gas at that time (June, 1984), he would never have let the engine idle for forty-five minutes.

II. *The Jury Instructions*.

In the present situation, there is no evidence which would warrant a reasonable inference that the defendant's ability to drive had been diminished before he arrived at the gas station. Compare *Commonwealth* v. *Hilton*, 398 Mass. 63, 68 (1986); *Commonwealth* v. *Otmishi*, 398 Mass. 69, 70-71 (1986); *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1010-1111 (1987). In those cases there was no reason to reach the issue of whether the defendant was operating the stopped vehicle because there was evidence that warranted a reasonable inference that the defendant had previously driven the vehicle while intoxicated. The evidence of this defendant's intoxication is limited to the time he spent at the gas station. Consequently, whether he drove while under the influence of intoxicating liquor depends upon whether his truck was "in operation" during the time period when he was stopped at the station.

The only instructions given by the trial judge relevant to that determination were as follows:

"The expression 'operation of a motor vehicle' covers not only all the well known and easily recognized things drivers do as they travel on a street or highway, but also any act which would tend to set the car in motion. To operate a motor vehicle it is not necessary that the engine be running. The manipulation of any mechanical part of the vehicle, or use of any electrical agency, which, alone or in sequence, will set in motion the motor power of the vehicle is sufficient in law to constitute operation. Furthermore, a driver continues to operate his motor vehicle, within the meaning of the law, when it is stopped in

the ordinary course of its operation, or even for some mechanical reason such as a stalled engine or lack of gasoline."[1]

"Operation" has many meanings depending upon the context in which the term is used. See *Boardman's Case*, 365 Mass. 185, 192 n.5 (1974), and cases therein collected. The instruction given in this case reflects three basic situations.

The first is illustrated by the case of *Commonwealth* v. *Uski*, 263 Mass. 22 (1928). In that case the defendant was convicted of operating his automobile while under the influence of liquor by a jury that was instructed that the defendant would be guilty of that offense if they found that he "got into his automobile which was standing in the street and manipulated the machinery of the motor for the purpose of putting the automobile into motion, the defendant being in the car and in a position to control its [movements], . . . whether the automobile moved or not." *Id.* at 24. The court stated that "[a] person operates a motor vehicle within the meaning of G. L. c. 90, § 24, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle." *Ibid.*

This portion of the instructions was properly given. If the jury accepted Officer Casey's testimony (that the engine was running) their verdict could be based upon the penultimate sentence of the instruction ("the manipulation of any mechanical part of the vehicle, or use of any electrical agency, which

[1] Essentially, the instruction mirrors Model Jury Instructions for Criminal Offenses Tried in the District Court Department 3.06 (1981). In delivering the instructions, the judge in this case substituted the word "motor" for the word "motive" in the penultimate sentence of the model instructions. It should also be noted that the defendant, by written request, asked that the jury be instructed: "The expression 'operation of a motor vehicle' covers not only all the well known and easily recognized things drivers do as they set the car in motion. The manipulation of any mechanical part of the vehicle, or use of any electrical agency, which alone or in sequence, will set in motion the motive power of the vehicle is sufficient in law to constitute operation." As can be seen, the critical difference between the instruction given and the one requested is that the defendant's proposed instruction requested, in effect, that the final sentence in the model instruction be omitted by the trial judge in charging the jury.

alone or in sequence, will set in motion the mot[ive] power of the vehicle is sufficient in law to constitute operation").

A second situation encompassed by the model instruction is that in which a vehicle is caused to move without the power of its engine. Thus, in *Commonwealth* v. *Clarke*, 254 Mass. 566 (1926), the defendant was held to have operated his motor vehicle when he "moved the gear shift from reverse into neutral, in consequence of which the car moved forward and down . . . [an] incline." *Id.* at 567.

There is no suggestion that the defendant's truck was ever observed moving, with or without the engine running. It follows that the second sentence of the model instruction ("To operate a motor vehicle it is not necessary that the engine be running") was, at best, inapplicable to the facts of this case.

The third situation grows out of cases such as *Commonwealth* v. *Henry*, 229 Mass. 19 (1918),[2] where the court stated: "The word 'operated' is not . . . limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation." *Id.* at 22.

If the jury believed the defendant's testimony that, when he arrived at the gas station, he shut the engine off and did not thereafter turn it on,[3] the phrase "stopped in the ordinary course of its operation" becomes crucial. The jury, however, were never instructed as to how that phrase was to be construed. "If a salient point of the case was not adequately covered and the attention of the judge was called to that fact at the close

---

[2] See also *Cook* v. *Crowell,* 273 Mass. 356, 358 (1930) ("It is settled law in this Commonwealth that a driver continues to operate a car on the highway during the time it is stopped in the ordinary course of its operation for soliciting trade or in calling for and delivering merchandise"); *Blair* v. *Boston Elev. Ry.,* 310 Mass. 1, 3 (1941) ("The usual operation of the vehicle as it proceeded along its designated route included the ordinary stops for the reception and discharge of passengers").

[3] Additionally, if the jury did not accept Casey's testimony, then there is no evidence on whether at the time of the defendant's arrest the keys were in the ignition or, even if there were such evidence, at what point the defendant put the keys in the ignition.

of the charge, the exceptions must be sustained. The test of the charge is the impression created by it as a whole, and much must be left to the discretion of the judge." *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972).

We are not saying that it was error to include the final sentence of the model instruction in the charge. We think to have omitted that sentence would have been unfair to the Commonwealth. However, it is the defendant's testimony which, if believed, makes the question whether the truck was "stopped in the ordinary course of its operation" a most "salient point." *Ibid*. Had the jury been instructed fully on the point, the defendant's guilt or lack thereof would have turned on the question whether the stop at the station was "fairly incidental to . . . [the] operation" of the vehicle. *Commonwealth* v. *Henry*, 229 Mass. at 22. If they believed the defendant's testimony, it was open for the jury to find that, after purchasing his cigarettes, the defendant remained to visit with the attendant for a period of such duration that at the time of his arrest the stop at the station was no longer incidental to his operation of the truck. On the instruction given, the jury could have concluded that, although the truck was stopped at the time of the defendant's arrest, the stop was in the ordinary course of operation because at some point the defendant would have to leave the station. No matter how great that probability of departure, the when and the how of his leaving were matters of speculation. Compare *Commonwealth* v. *Hilton*, 398 Mass. at 67-68 n.5, quoting from *State* v. *Pritchett*, 53 Del. 583, 598-599 (Del. Super. Ct. 1961).

No objection was taken to the instruction, but we conclude that the failure to instruct further and to explain the meaning of the phrase here at issue created a substantial risk of a miscarriage of justice. In the first instance, it took from the jury any consideration of the defendant's legitimate theory of defense to the indictment. Moreover, the jury recognized the importance of the issue. After twenty-three minutes of deliberations, they asked the trial judge: "We, the jury, request clarification of the operation section of the Mass. law as it pertains to this case." Clarification was not given. Rather than instructing

the jury along the lines of *Commonwealth* v. *Henry*, 229 Mass. at 22, that there is no operation of a vehicle within the meaning of the statute when the stop is not incidental to the driving, the judge repeated his earlier charge, the model instruction, with its troublesome final sentence. It is for these reasons that we conclude that, in the circumstances, reversal of the conviction is required.

III. *Other Bad Acts.*

In addition to the results of the defendant's breathalyzer test (.25) and Casey's testimony concerning the defendant's eyes, speech, and breath, there was evidence to show that, when arrested, the defendant threatened Casey's life, telling him that the next time he saw Casey directing traffic, he would run him over. The defendant objected to this testimony but was overruled. On cross-examination of Casey, the defendant elicited that Casey brought formal charges against the defendant for those threats and that the defendant pleaded guilty. Further, on cross-examination of the defendant, the prosecutor made fleeting reference to the facts that Casey had found a substance in the defendant's truck which the defendant tried to explain away to Casey as "white powder." Defense counsel took no objection and on redirect stated: "Why don't we get it out in the open." He then brought to the jury's attention the facts that, in addition to threatening a police officer, the defendant also had been charged with and pleaded guilty to possession of cocaine. There was a strategy: when guilty, the defendant was willing to say so. He now claims prejudice.

As these questions could recur at any retrial, we consider them. As to the evidence of the defendant's threats against Casey's life, we repeat the rule that "otherwise relevant evidence is not rendered inadmissible simply because it may indicate that the defendant has committed another offense." *Commonwealth* v. *Roberts*, 378 Mass. 116, 125 (1979). See also *Commonwealth* v. *Palmariello*, 392 Mass. 126, 138-139 (1984). We think that a trial judge could conclude that the threats were relevant to the question of whether the defendant was intoxicated (see *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 796 [1981]) and that the probative value of the evidence

was not substantially outweighed by its potential for prejudice. See, e.g., *Commonwealth* v. *Walden*, 380 Mass. 724, 732 (1980); *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. 172, 177-178 (1978).

We cannot predict what reference, if any, will be made to a "white powder" or to cocaine at any retrial. In the present instance, the matter arose in respect to the defendant's posture as a truthful man. The prosecutor was attempting to show that the defendant told Casey that the substance was "white powder" and that he knew that to be untruthful. The questions of relevance, probative value, and the potential for prejudice are best left for the trial judge to resolve on the basis of the state of the evidence at the time the issue arises, if it does. We will not say that the evidence would be inadmissible in all circumstances. See *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. 429, 434 (1985).

*Judgment reversed.*

*Verdict set aside.*