COMMONWEALTH *vs.* ALLAN J. PLOWMAN.

Middlesex. November 20, 1989. - January 23, 1990.

Present: DREBEN, SMITH, & FINE, JJ.

*Motor Vehicle*, Operating under the influence. *Words*, "Operation."

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, a substantial risk of a miscarriage of justice was created by the judge's erroneous instructions that evidence that the intoxicated defendant was observed sleeping in the driver's seat of a parked automobile, with the keys in the ignition and the engine running, without more, compelled a finding of "operation" of the motor vehicle. [234]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on January 27, 1989.

On appeal to the jury session of the Cambridge Division the case was tried before *Arthur Sherman*, J.

*David Nies* (*John J. Barter* with him) for the defendant.

*Clea T. Andreadis*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was tried and convicted by a jury in the District Court on a complaint charging that he operated an automobile while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24 (1)(*a*)(1). The sole contested issue at the trial was whether the defendant had operated the vehicle within the meaning of the statute. The defendant claims on appeal that, in view of the evidence at the trial, the judge instructed the jury erroneously on that issue.

We summarize the evidence introduced by the Commonwealth. At approximately 2:15 A.M. on January 24, 1987, a police officer was patrolling the Fellsway West area of Medford when he saw an automobile illegally parked at the corner of Fellsway West and Cherry Street. The officer parked

his cruiser and approached the automobile. He observed the defendant seated in the driver's seat and a woman, subsequently identified as one Hart (pseudonym), seated in the passenger's seat. The automobile belonged to Hart and was parked in front of the apartment that she shared with the defendant. Both the defendant and Hart were asleep, the automobile's keys were in the ignition, and the engine was running.

The officer unsuccessfully attempted to wake the occupants by knocking on the door, window and roof of the automobile. He then opened the driver's door and shook the defendant. The defendant woke up and the officer asked him to get out of the automobile. When the defendant did not respond, the officer repeated the request twice. The defendant, with the officer's assistance, then stepped from the automobile.

As he did so, the defendant slumped back against the automobile. The officer then spoke with the defendant. The defendant stated, "Oh no, don't slow me down," and "I live right here and I was just going to the store." The officer formed an opinion that the defendant and, for that matter, Hart were intoxicated. The booking officer, when he observed the defendant, formed the same opinion. The breathalyzer test revealed that the percentage, by weight, of alcohol in the defendant's blood was .19.

Hart testified for the defendant. She stated that she lived with the defendant and that, on the evening of January 23, she drove her automobile to a grocery store and then to a friend's house where she watched television and drank a six pack of beer. The defendant stayed home and watched television with Hart's twelve year old son. During the course of the evening, the defendant drank several cans of beer.

Hart drove home, arriving there at approximately 1:00 A.M. on January 24, and parked in front of the apartment. She left the engine running and the keys in the ignition and enlisted the defendant's assistance to bring groceries in from the automobile. An argument ensued between them because Hart had been out so late. She attempted to get back in the

vehicle and go out again as a result of the argument. The defendant went to the automobile and insisted that Hart not drive. He pushed her over to the passenger's seat and sat in the driver's seat. Their argument continued and, eventually, they both fell asleep in the front seat. She admitted that the defendant was intoxicated but denied that he had moved or driven the automobile before his arrest.

The defendant's testimony was consistent with Hart's. During the course of his testimony, his counsel asked the defendant if he had moved the automobile. At this point, the judge interrupted the defendant's testimony and proceeded to instruct the jury on the meaning of the word "operation." The judge told the jury:

> "Ladies and gentlemen . . . I'm going to give you a preliminary instruction. I will elaborate on it somewhat (inaudible). In this Commonwealth, for the purposes of operating a vehicle, the word operation does not mean (inaudible) so long as the keys are in the ignition and the vehicle is operative, moveable. *You may be sitting in a line of traffic with ten cars in front of you and ten cars behind you (inaudible) not* [sic] *mean you are operating that vehicle (inaudible). You may be sitting in front of your home with the keys in the ignition, so long as you are behind the driver's seat, the motor doesn't even have to be running. And in this Commonwealth, the law is that too is operation. You need not be traversing the Massachusetts Turnpike or Route 128, Mass. Avenue, Cambridge, Arlington or Belmont. In this state, if you're behind the wheel of an automobile which is operative with the keys in the ignition, whether the motor is on or not, you are operating."* (Emphasis supplied.)[1]

In his final instructions, the judge told the jury:

---

[1]The defendant objects, on appeal, to the "timing" of the instruction. Much discretion is left to the trial judge on such matters and, in view of our decision, we do not consider the issue.

"Now let me tell you about operation. The expression "operation of a motor vehicle" covers not only all of the well known and easily recognized things that drivers do as they travel on our highways, but any act which might tend to set a car in motion. And in our state, a driver operates a vehicle within the meaning of our law, whether you like it or not, when it is completely stopped in the ordinary course of operation and is operable. So I repeat to you what I stopped the proceedings before to explain: You can be standing dead still in the line of traffic and you're operating your motor vehicle. *You can be sitting in front of your home with the keys in the ignition, keys must be in the ignition. So long as that motor vehicle is operable, it can move — it can be put in motion, then in our state, you're operating that motor vehicle and it hasn't moved. You're just sitting."* (Emphasis supplied.)

Later in his instructions the judge stated:

"So based on your experience, your common sense, you're going to decide whether or not, *if this Defendant was behind the wheel of that automobile and the keys were indeed [in] the ignition, the next thing you have to decide, if you're so convinced beyond a reasonable doubt, is whether or not his then-condition, his ability to drive safely, was diminished . . ."* (emphasis supplied).

These instructions are the basis of the defendant's main issue on appeal. The defendant did not object to these instructions at trial. Therefore, if we find the instructions to be in error, we can only reverse if they created a substantial risk of a miscarriage of justice. *Commonwealth v. Cavallaro*, 25 Mass. App. Ct. 605, 610 (1988).

Over fifty years ago, the Supreme Judicial Court defined the meaning of "operation" as that term is used in G. L. c. 90, § 24. In *Commonwealth v. Uski*, 263 Mass. 22, 24 (1928), the court held that "[a] person operates a motor vehicle

within the meaning of G. L. c. 90, § 24, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle." This remains the definition of "operation" today. See *Commonwealth* v. *Hilton*, 398 Mass. 63, 66 n.4 (1986); *Commonwealth* v. *Otmishi*, 398 Mass. 69, 70 & n.1 (1986); *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1011 (1987). Under this definition, evidence that an intoxicated person was observed sleeping in the driver's seat of a parked vehicle, with keys in the ignition and the engine running, *by itself*, does not mandate a finding of "operation" under G. L. c. 90, § 24. Decisions with similar fact patterns do not address the issues raised here. See *Commonwealth* v. *Hilton, supra, Commonwealth* v. *Otmishi, supra*, and *Commonwealth* v. *Colby, supra*. Unlike those decisions, which involve the denials of motions for required findings of not guilty,[2] in this decision we are only concerned with the correctness of the judge's instructions to the jury.

From the judge's entire instructions, this jury was clearly left with the impression that evidence that the defendant was sleeping in the driver's seat of a parked automobile, with the keys in the ignition and the engine running, compelled, without more, a finding of "operation". This was error. Further, it created a substantial risk of a miscarriage of justice because it "took from the jury any consideration of the defendant's legitimate theory of defense to the . . . [complaint]." *Commonwealth* v. *Cavallaro*, 25 Mass. App. Ct. at 610. Therefore, we conclude that, in the circumstances, a new trial is required.

We consider briefly another issue raised by the defendant which may recur at the new trial. The defendant should be allowed to give his reasons for sitting in the driver's seat upon entering the automobile. Contrast *Commonwealth* v. *Uski, supra* at 24-25. The question held by the Court to have been properly excluded in *Commonwealth* v. *Uski, supra* at

---

[2]The defendant does not raise sufficiency of the evidence as an issue.

24-25, was directed at the defendant's intentions *after* he entered the automobile. That was not the case with the question here.

The other issues raised by the defendant are without merit.

*Judgment reversed.*

*Verdict set aside.*