Commonwealth *v.* Olivo.

COMMONWEALTH *vs.* ENRIQUE OLIVO.

No. 01-P-1587.

Hampden. December 13, 2002. - June 20, 2003.

Present: BECK, DREBEN, & McHUGH, JJ.

*Controlled Substances. Habitual Offender. Identification. Evidence,* Identification.

The evidence at the trial of a criminal complaint charging the defendant with distribution of cocaine, second offense, was sufficient to prove beyond a reasonable doubt that the defendant was the person convicted of specified prior offenses, where the offenses listed in a criminal conviction record that had been introduced in evidence looked like the offenses for which a police officer testified he had arrested the defendant, where the offense date set out in the record was the date on which the officer testified that the defendant's crime and arrest had occurred, where the officer testified that the police had sought a complaint in the Springfield District Court and the record was from that court, and where the record contained identifying data which the jury could have used to determine whether the defendant fit the description the record contained. [371-373]

At the trial of a criminal complaint charging the defendant with distribution of cocaine, second offense, in a second proceeding before the same jury that convicted the defendant of the underlying offense, the judge erred in failing to instruct the jury that, insofar as proof of a prior conviction was concerned, they were permitted to consider only the evidence introduced during the course of the second trial; however, given the abundant circumstantial evidence introduced at the second trial that the defendant had a prior conviction for like offenses, the error gave rise to no serious doubt that the result of the second trial might have been different had the error not been made. [373-375]

INDICTMENTS found and returned in the Superior Court Department on July 30, 1999.

The cases were tried before *Judd J. Carhart*, J.

The case was submitted on briefs.

*Joseph D. Bernard* for the defendant.

*William M. Bennett*, District Attorney, & *Jane Davidson Montori & Bethany C. Lowe*, Assistant District Attorneys, for the Commonwealth.

McHUGH, J. After the defendant, Enrique Olivo, sold twenty dollars worth of "crack" cocaine to a State police trooper, he was arrested and indicted for distribution of cocaine, second offense, see G. L. c. 94C, § 32A(*c*), (*d*), and distribution of cocaine within 100 feet of a public park, see G. L. c. 94C, § 32J. In the first of two trials mandated by G. L. c. 278, § 11A,[1] for charges involving commission of a prior offense, the jury returned a guilty verdict on the charge of distribution of cocaine within 100 feet of a public park. In the second trial, the same jury returned a verdict stating that he had previously been convicted of like offenses. From the second verdict, the defendant appeals, claiming that the Commonwealth produced insufficient second-trial evidence for the jury to conclude that he had been convicted previously and that the trial judge erroneously failed to instruct the second-trial jury that they were limited to second-trial evidence in deciding the prior conviction issue. We affirm.

[1] In pertinent part, the statute provides:

"If a defendant is charged with a crime for which more severe punishment is provided for second and subsequent offenses, and the complaint or indictment alleges that the offense charged is a second or subsequent offense, the defendant on arraignment shall be inquired of only for a plea of guilty or not guilty to the crime charged, and that portion of the indictment or complaint that charges, or refers to a charge that, said crime is a second or subsequent offense shall not be read in open court. If such defendant pleads not guilty and is tried before a jury, no part of the complaint or indictment which alleges that the crime charged is a second or subsequent offense shall be read or shown to the jury or referred to in any manner during the trial . . . . If . . . there is a verdict . . . of guilty after trial, then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that the crime charged is a second or subsequent offense. If he pleads . . . not guilty thereto, he shall be entitled to a trial by jury of the issue of conviction of a prior offense, subject to all of the provisions of law governing criminal trials. . . . The court may, in its discretion, either hold the jury which returned the verdict of guilty of the crime, the trial of which was just completed, or it may order the impanelling of a new jury to try the issue of conviction of one or more prior offenses. Upon the return of a verdict, after the separate trial of the issue of conviction of one or more prior offenses, the court shall impose the sentence appropriate to said verdict."

The facts surrounding the drug dealing that led to the defendant's arrest need not be recounted because they are irrelevant to the claims of error he now presses. We focus instead on evidence bearing on the defendant's identity that was introduced at both trials, for that evidence lies at the heart of his appeal.

Both trials took place in April, 2000. In the first trial, a police officer called by the prosecution identified the defendant as the person whom police arrested after he sold crack cocaine to an undercover State trooper on May 13, 1999. The officer also testified that the defendant's name was Enrique Olivo, that his birthday was January 2, 1981, and that he was nicknamed "Pose" and "June Bug." The defendant testified in his own defense and, among other things, identified himself as Enrique Olivo of 120 B Rifle Street, Springfield, Massachusetts. He also said that he was nineteen years old. As stated, the first-trial jury returned verdicts of guilty of distribution of cocaine and distribution of cocaine within 100 feet of a public park.

After the jury returned the first-trial verdicts, the defendant was placed at bar before the same jury for trial of the single question whether he had previously been convicted of like offenses.[2] The second-trial evidence was brief. The Commonwealth called one witness, a Springfield police officer, who testified that he had arrested the defendant on September 29, 1998, and had charged him with "possession of a Class B substance, crack cocaine, with the intent to distribute and violation of a drug free school zone, the Brookings school." The officer also testified that his department sought complaints against the defendant for those offenses in the Springfield District Court. Finally, the officer identified the defendant as the person he had arrested for the offenses but testified that he knew him only as "June Bug."[3]

Near the end of the officer's direct testimony, the Com-

[2]In fact, the second trial resulted from a failed plea colloquy sparked by defense counsel's suggestion that the defendant wished to admit to a previous conviction.

[3]In somewhat ambiguous testimony, the officer also said that "Sergeant Meleady knew him as the Defendant."

monwealth introduced a certified copy of a conviction record from the Springfield District Court. The record said that on September 30, 1998, a person named Enrique Olivo had been charged in that court with "94C/32A/G DRUG, POSSESS TO DISTRIB CLASS B c94C" and "94C/32J DRUG VIOLATION NEAR SCHOOL/PARK c94C 32J." Although neither charge was otherwise explained, the record stated that the offenses had occurred on September 29, 1998, and yielded convictions on May 10, 1999.[4] By way of identification, the record stated that the person named Olivo had a birth date of January 2, 1981, that he was a white male, five feet, ten inches in height, weighing 180 pounds, with brown eyes and hair. Finally, the record stated that "Olivo" lived at 120 B Rifle Street, Springfield, Massachusetts.

The defendant called no witnesses. Both counsel argued to the jury, and the judge instructed the jury, that the Commonwealth had the burden of proving beyond a "reasonable doubt that the Defendant [was] guilty of the charge made against him, in this case that he [was] a second offender," i.e., that he was "the same Enrique Olivo who was convicted on the prior occasion as alluded to" in the exhibit the Commonwealth had introduced. Twenty minutes after retiring, the jury returned a verdict stating that the defendant was "guilty" on the "charge" of being a second offender.

The defendant's first claim here is that the evidence before the second-trial jury was insufficient to prove, beyond a reasonable doubt, that he was the person convicted of the specified prior offenses on May 10, 1999. Relying on *Commonwealth* v. *Koney*, 421 Mass. 295, 301-302 (1995), he asserts that the second-trial jury were prohibited from considering any evidence regarding the prior conviction save that introduced during the second trial. Constrained by that restriction, he continues, all the second-trial jury had before them was evidence that someone with a name identical to his was convicted of the relevant drug offenses on May 10, 1999. Identity of names, he concludes, was

---

[4]As it happened, the convictions occurred three days before the cocaine sale that led to his current conviction.

not enough to carry the Commonwealth's burden.[5]

The defendant correctly cites *Koney* for the proposition that mere identity of names is not enough to prove a prior conviction. But, in *Koney*, the Commonwealth sought to prove the prior offenses without any testimony, simply by producing conviction records. Here, although the jury were limited to considering the evidence the Commonwealth produced at the second trial — and we shall deal with that issue next — the jury had before them much more than mere identity of names. The offenses listed in the record of the Springfield District Court, although stated in something of a code, looked like the offenses for which the officer testified he had arrested the defendant. The offense date set out in the record was the date on which the officer testified that the defendant's crime and arrest had occurred. The officer also testified that the police department had sought a complaint in the Springfield District Court and the record was from the Springfield District Court. Finally, the record contained identifying data which the jury, having had a full opportunity to view the defendant when he stood before them as the second trial began, and as he sat at counsel table throughout the proceeding, could have used to determine whether the defendant fit the description the record contained.[6] Cf. *Commonwealth* v. *Burke,* 339 Mass. 521, 534-535 (1959); *Commonwealth* v. *Kater,*

---

[5] "The defendant did not move for a required finding of not guilty under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). 'However, findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice.' *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986). We therefore review the sufficiency of the evidence under the established standard of 'whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." ' *Commonwealth* v. *Clary,* 388 Mass. 583, 588-589 (1983), quoting from *Commonwealth* v. *Velucci,* 284 Mass. 443, 445 (1933)." *Commonwealth* v. *Cromwell,* 53 Mass. App. Ct. 662, 667-668 (2002).

[6] To be sure, the record of the trial does not show whether any of the identifying data, apart from the date of birth, matched the defendant. But, at this stage, it is the defendant's burden to show that the evidence as a whole, including the identifying data, was insufficient to support the jury's verdict. See *Commonwealth* v. *Gordon,* 389 Mass. 351, 353-354 (1983). Accordingly, in the absence of information in the trial court record showing that the District

388 Mass. 519, 533 (1983). This was not, therefore, a case in which the Commonwealth simply relied on identity of names. See, e.g., *Commonwealth* v. *Maldonado*, 55 Mass. App. Ct. 450, 459 (2002), *S.C.*, 439 Mass. 460 (2003). On this record, the evidence before the jury was sufficient to support their verdict.

The defendant's second contention is that the trial judge failed to instruct the jury that, insofar as proof of a prior conviction was concerned, they were permitted to consider only the evidence introduced during the course of the second trial. He is correct in his assertion that the judge gave no such instruction, but defense counsel did not seek one. Consequently, if omission of the instruction was error, we reverse only if the error produced a substantial risk of a miscarriage of justice. *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 463-464 (1989).

> " 'This court's traditional treatment of the substantial risk issue calls for us to decide if we have a serious doubt whether the result of the trial might have been different had the error not been made.' *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). In making that determination, we review the evidence and the case as a whole, considering the strength of the Commonwealth's case, as well as the nature and significance of the alleged errors. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). A new trial will be ordered only in the extraordinary situation where, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated. *Commonwealth* v. *Amirault*, [424 Mass. 618,] 647 [(1997)]."

*Commonwealth* v. *Chase*, 433 Mass. 293, 299 (2001).[7]

We conclude that omission of the instruction was an error. In

___

Court record did not match the defendant, we cannot conclude that that data was of no assistance to the jury in identifying the defendant as the person convicted of the earlier crime.

[7]The *Chase* formulation clearly imposes on the defendant the burden of showing that a substantial risk of a miscarriage of justice has occurred. In so doing, *Chase* builds on *Commonwealth* v. *LeFave*, 430 Mass. at 174, in which the Supreme Judicial Court said that nothing in *Commonwealth* v. *Alphas*, 430 Mass. at 13, changed the "court's traditional treatment of the substantial risk issue."

*Koney*, the Supreme Judicial Court, in a short, unencumbered, declarative sentence, said that "[t]he separate trial requirement of G. L. c. 278, § 11A, preclude[s] the [fact finder] from relying on any evidence that [was] presented at the [first] trial to establish identity." *Commonwealth* v. *Koney*, 421 Mass. at 302.[8] While the substantive offense in *Koney* had been tried to a jury and the second trial proceeded jury-waived, there is no hint or suggestion in the opinion, or in any succeeding opinion, that the quoted rule was limited to situations in which the two trials proceeded with different fact finders.

If, as *Koney* commands, the evidence on which the jury may draw in deciding whether the defendant had earlier committed like offenses is limited to evidence admitted at the second trial, then the defendant was entitled to instruction to that effect. Cf. *Commonwealth* v. *Depradine*, 42 Mass. App. Ct. 401, 409 (1997); *Commonwealth* v. *Buzzell*, 53 Mass. App. Ct. 362, 371 (2001); *Commonwealth* v. *Perryman*, 55 Mass. App. Ct. 187, 197 (2002). Moreover, enforcement of the *Koney* limitation is virtually impossible without such an instruction because the

---

[8]When considering that limitation, it is worthwhile noting the unique character of the second trial G. L. c. 278, § 11A, mandates. Unlike any other trial, that trial can only occur after there has been a full trial of the same defendant on a similar offense. In addition, the second trial may occur, as it did in this case, before a jury composed entirely of citizens whose fresh and particularized knowledge of the defendant and his doings would disqualify them from sitting on his jury in any other context. Finally, the second trial is simply concerned with a penalty-enhancing fact, not with a freestanding charge. See *McDonald* v. *Commonwealth*, 173 Mass. 322, 327 (1899), judgment affirmed, 180 U.S. 311, 313 (1901); *Commonwealth* v. *Murphy*, 389 Mass. 316, 320-321 (1983); *Commonwealth* v. *Chavis*, 415 Mass. 703, 706 n.5 (1993); *Bynum* v. *Commonwealth*, 429 Mass. 705, 706-707, 708-709 (1999); *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000). While the presumption of innocence is an essential ingredient of the trial of any criminal "charge," it is conceptually difficult to apply a presumption of "innocence" to isolated facts. It is conceivable, therefore, that § 11A's separate trial requirement was legislatively designed, not to insulate the second trial from the infectious potential of the first, but instead simply to postpone resolution of a single disputed fact — whether there had been a prior conviction — with enormous potential for prejudicing the first, substantive trial and to surround the postponed resolution with the same procedural safeguards the defendant would have had if the resolution had occurred in the first trial. Because of *Koney*'s clear command, we need not determine the precise rationale on which the *Koney* limitation rests.

jury were fresh from the first trial where they heard evidence that uninstructed common sense would suggest was helpful in resolving the single issue the second trial presented. Moreover, so consonant with common sense is the utility of that first-trial evidence that we may almost presume that an uninstructed jury made use of first-trial evidence and was consequently tainted by information that, at the second trial, amounted to an extraneous influence. See generally *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 255-262 (2002).

Error established, the question, thus, is whether "we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Chase*, 433 Mass. at 299, quoting from *Commonwealth* v. *LeFave*, 430 Mass. at 174. We do not.

The Springfield police officer who testified at the second trial said that he had arrested the defendant, whom he knew as "June Bug," on September 29, 1998; that he had charged the defendant with "possession of a Class B substance, crack cocaine, with the intent to distribute and violation of a drug free school zone, the Brookings school"; and that the Springfield police department sought complaints for those offenses in the Springfield District Court. The documentary evidence consisted of a record showing a conviction on a complaint that issued from the Springfield District Court on September 30, 1998, the day after the defendant's arrest, charging "Olivo, Enrique J." with possession with intent to distribute a Class B substance and doing so near a school or park. The record listed the "date of offense" as "9/29/1998."[9] The second-trial record contains abundant circumstantial evidence that the defendant had a prior conviction for like offenses. We are, therefore, persuaded that omission of the instruction did not change the trial's result.

*Judgment affirmed.*

---

[9]As noted earlier, see note 6, *supra*, the record is silent on whether the identifying information on the conviction record does or does not match the defendant. That silence manifestly does not help the defendant to show that omission of the instruction made a difference in the trial's outcome.