## COMMONWEALTH *vs.* ROBERT S. McGILLIVARY.

No. 09-P-507.

Essex. September 13, 2010. - January 25, 2011.

Present: McHugh, Katzmann, & Vuono, JJ.

*Motor Vehicle,* Operating under the influence, Operation. *Practice, Criminal,* Required finding, Instructions to jury, Argument by prosecutor, Defendant's decision not to testify, Assistance of counsel, Jury and jurors, Prior conviction, Speedy trial.

This court concluded that a person who places a key in the ignition of a motor vehicle and turns the electricity on without starting the engine may be found to be "operating" the vehicle for the purposes of G. L. c. 90, § 24. [645-647]

At the trial of an indictment charging operating a motor vehicle under the influence of intoxicating liquor, fourth offense, in violation of G. L. c. 90, § 24(1)(*a*)(1), evidence that a criminal defendant was found asleep in the driver's seat of a motor vehicle, and that the key was in the ignition and had been turned to the "on" position so that the energy to the vehicle itself was on (although the engine itself was off and the vehicle was not running), was sufficient to support a finding that the defendant, while sitting in the driver's seat, put the key in the ignition and turned it to the on position, i.e., an act the jury could have found to be the first step in a sequence to set in motion the operative power of the vehicle, and therefore that the defendant "operated" the vehicle. [647-648, 649-651]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the judge's instructions to the jury [648-649] or by the prosecutor's closing argument [651].

There was no merit to a criminal defendant's argument that his right to testify at his trial was "improperly muzzled." [651]

At a criminal trial, the judge did not abuse his discretion in denying the defendant's motion to replace his counsel [651-652] or in declining to remove two jurors for cause [652].

At the trial of an indictment charging operating a motor vehicle under the influence of intoxicating liquor, fourth offense, in violation of G. L. c. 90, § 24(1)(*a*)(1), there was sufficient evidence of the defendant's prior convictions presented at the subsequent offense portion of the trial to sustain his conviction. [652-653]

There was no merit to a criminal defendant's contention that he was denied his right to a speedy trial, where, in total, there were at least 331 days that were excluded from the 686 days between arraignment and trial, meaning that fewer than 365 days remained to count against the Commonwealth, and therefore the defendant was tried within the time constraints of Mass. R.Crim.P. 36(b). [653-654]

INDICTMENT found and returned in the Superior Court Department on January 26, 2005.

The case was tried before *Howard J. Whitehead*, J.

*James P. McKenna* for the defendant.

*Ronald DeRosa*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. The defendant Robert McGillivary appeals from a conviction by a Superior Court jury of operating a motor vehicle under the influence of intoxicating liquor (OUI), fourth offense, in violation of G. L. c. 90, § 24(1)(*a*)(1).[1] His principal issue focuses on the meaning of "operation" under that statute. We affirm.

1. *Operation of the motor vehicle.* A. *Operation as matter of law.* At trial, the Commonwealth pursued only one theory: that the defendant, who was under the influence of intoxicating liquor and was found slumped over the wheel, operated a motor vehicle by putting the keys in the ignition and turning the electricity on, but not turning the engine on. There was no evidence from which the jury could infer that the defendant drove his car drunk before getting behind the wheel. Contrast *Commonwealth v. Colby*, 23 Mass. App. Ct. 1008, 1011 (1987). The defendant argues that the evidence of operation was insufficient as matter of law because putting a key into the ignition and turning it does not constitute operation when the engine has not been

---

[1] General Laws c. 90, § 24(1)(*a*)(1), as amended through St. 2003, c. 28, §§ 1, 2, provides in relevant part:

"Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor, or of marijuana, narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C, or the vapors of glue shall be punished . . . .

"If the defendant has been previously convicted or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program . . . because of a like offense three times preceding the date of the commission of the offense for which he has been convicted, the defendant shall be punished by a fine of not less than [$1,500] nor more than [$25,000] and by imprisonment in the state prison for not less than two and one-half years nor more than five years . . . ."

engaged.[2] The issue whether a defendant who places the key in the ignition and turns the electricity on without starting the engine may be found to be "operating" the vehicle for purposes of G. L. c. 90, § 24, is one of first impression in Massachusetts.[3]

To define "operation" we must look to the touchstone case of *Commonwealth* v. *Uski*, 263 Mass. 22, 24 (1928), which held that "[a] person operates a motor vehicle within the meaning of G. L. c. 90, § 24, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle."[4] See *Commonwealth* v. *Merry*, 453 Mass. 653, 661 (2009) (reaffirming *Uski* definition of operation). Under the *Uski* definition, turning the key in the ignition to the "on" setting could be found to be part of a sequence that would set the vehicle's engine in motion and that would, thus, constitute operation.[5]

Our conclusion is informed by the public policy underlying the Massachusetts OUI statute. The purpose of G. L. c. 90, § 24, is to "protect[] the public from intoxicated drivers," *Commonwealth* v. *Ginnetti*, 400 Mass. 181, 184 (1987), by "deter[ring] individuals who have been drinking intoxicating

[2]Quite correctly, the defendant does not dispute that operation can occur even when the vehicle is "standing still." *Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. 317, 320 (1994), quoting from *Commonwealth* v. *Clarke*, 254 Mass. 566, 568 (1926).

[3]If the evidence shows that a defendant was seated in the driver's seat with the engine running or while it was still warm, it is well established that a jury may draw the reasonable inference that he operated his vehicle within the meaning of the statute. See *Commonwealth* v. *Eckert*, 431 Mass. 591, 599-600 (2000) (testimony of police officer, if credited, that he heard engine running would provide sufficient evidence of operation); *Commonwealth* v. *Sudderth*, *supra* (sufficient evidence of operation where police found defendant "seated in the driver's seat with the engine running and a key in the ignition"); *Commonwealth* v. *Petersen*, 67 Mass. App. Ct. 49, 52 (2006) (proof of operation where engine still warm). Cf. *Commonwealth* v. *Plowman*, 28 Mass. App. Ct. 230, 233-234 (1990) (intoxicated driver discovered behind wheel of car with engine running and keys in ignition does not necessarily mandate a finding of operation).

[4]In *Commonwealth* v. *Uski*, 263 Mass. at 23-24, there was conflicting testimony whether the defendant turned on the motor or simply placed the key in the ignition.

[5]See also *Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. at 320 ("The defendant's intention after occupying the driver's seat is not an element of the statutory crime").

liquor from getting into their vehicles, except as passengers."
*Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. 317, 300-321
(1994), quoting from *State* v. *Ghylin*, 250 N.W.2d 252, 255
(N.D. 1977). Cf. *State* v. *Haight*, 279 Conn. 546, 554-555 (2006),
quoting from *State* v. *Gill*, 70 Ohio St. 3d 150, 153-154 (1994)
("[a] clear purpose of the [Ohio OUI statute] is to discourage
persons from putting themselves in the position in which they
can potentially cause the movement of a motor vehicle while
intoxicated . . ."). Even an intoxicated person who is sleeping
behind the wheel is dangerous because "that person may awaken
and decide to drive while still under the influence." *State* v.
*Kelton*, 168 Vt. 629, 630 (1998).[6]

In sum, applying the *Uski* definition to the facts before us,
we conclude that, as matter of law, the evidence that the defend-
ant, who was found in the driver's seat, turned the ignition key
— an act that the jury could have found to be the first step in a
sequence to set in motion the motive power of the vehicle —
was sufficient to permit the jury to conclude that he "operated"
the motor vehicle. See *State* v. *Haight*, 279 Conn. at 551-555
(holding that inserting a key into the ignition constitutes opera-
tion under a definition of operation similar to the *Uski* defini-
tion because this is an act that is part of a sequence that will
"set in motion the motive power of the vehicle") (citation
omitted).[7,8]

---

[6]See also *State* v. *Ghylin*, 250 N.W.2d 252, 255 (N.D. 1977), quoting from
*Hughes* v. *State*, 535 P.2d 1023, 1024 (Okla. Crim. App. 1975) ("We believe
that an intoxicated person seated behind the steering wheel of a motor vehicle
is a threat to the safety and welfare of the public. The danger is less than
where an intoxicated person is actually driving a vehicle, but it does exist.
The defendant when arrested may have been exercising no conscious violation
with regard to the vehicle, still there is a legitimate inference to be drawn that
he placed himself behind the wheel of the vehicle and could have at any time
started the automobile and driven away").

[7]Cf. *Stevenson* v. *Falls Church*, 243 Va. 434, 438 (1992) (applying a defini-
tion of operation similar to the *Uski* definition in holding that the defendant
did not operate the vehicle "[b]ecause the presence of the key in the ignition
switch in the off position did not engage the mechanical or electrical equip-
ment" of the vehicle); *Propst* v. *Commonwealth*, 24 Va. App. 791, 794 (1997)
(holding that the *Stevenson* v. *Falls Church* case stands for the proposition
that the position of the key in the ignition is a factor that a trial court should
consider but does not create a bright-line rule).

[8]We do not decide whether any or all of the following could be found to be

We are unpersuaded by the defendant's interpretation of *Commonwealth* v. *Ginnetti*, 400 Mass. at 184, as requiring that an engine be engaged and as meaning that turning the key to the "on" position could not constitute operation. Specifically, the defendant argues that turning the key in the ignition to a position that does not start the car would only draw power from the battery and thus neither starts the engine nor makes use of the power provided by its engine. Even if we assume, arguendo, that the defendant is correct and that turning the key to the "on" position does not engage the engine,[9] the defendant misconstrues *Ginnetti*. In *Ginnetti*, *supra* at 183-184, the court was faced with the question whether a vehicle with a functioning engine was rendered inoperable within the meaning of G. L. c. 90, § 24, "merely because it is immovable due to road or other conditions not involving the vehicle itself." *Id.* at 184. Applying the *Uski* definition to the facts before it, the court concluded that "the defendant . . . operate[d] a motor vehicle by starting its engine or by making use of the power provided by its engine." *Id.* at 183-184. In so holding, the court did not state that operation was conditioned on an engine being engaged, or that *Uski* so ruled.

Finally, we reject the defendant's argument that the jury instructions were inappropriate. The judge's instructions to the jury,[10] to which defense counsel did not object at trial, did not create a substantial risk of miscarriage of justice. Contrary to

operation under G. L. c. 90, § 24: inserting a key in the ignition without turning it and without engaging the motor or the vehicle's power; using an electronic remote starting device to start the engine of the car without inserting a key in the ignition, where putting a key in the ignition would be required to actually drive the car; or putting the key in the ignition to engage either the electricity or the motor before going to sleep in a seat other than the driver's seat.

[9]In the absence of any evidence below regarding whether the key, when turned in the ignition to the on position, engages the engine, we reach no conclusion on that mechanical issue.

[10]The relevant portion of the jury instructions is the following:

"The first element which the Commonwealth must prove is that the defendant operates a motor vehicle. The expression 'operation of a motor vehicle' covers not only all the well known and easily recognize[d] things that drivers do, as they travel on a street or highway, but also any act which would tend to set the vehicle in motion. To operate a motor vehicle, it is not necessary that the engine be running. The intentional as opposed to accidental manipulation of any mechanical

the defendant's claim, the instructions did not leave jurors with the impression that evidence that the defendant was sleeping in the driver's seat with a key turned in the ignition compelled a finding of operation. Contrast *Commonwealth* v. *Plowman*, 28 Mass. App. Ct. 230, 234 (1990).[11]

B. *Sufficiency of the evidence.* The defendant, who does not challenge being under the influence of intoxicating liquor[12] or the fact that the vehicle was on a public way,[13] argues on appeal that the Commonwealth failed to present sufficient evidence that he "operate[d] a motor vehicle." See G. L. c. 90, § 24(1)(*a*)(1). More specifically, he contends that as a factual matter, the Commonwealth failed to prove that he put the key in the ignition of the car and turned the key. We consider "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged" beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979) (citation omitted).

---

part of the vehicle, or the use of any electrical agency which alone or in sequence will set in motion the mode of power of the vehicle is sufficient in law to constitute operation. A person operates a motor vehicle, within the meaning of the law, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency, which alone or in sequence, meaning taken together with other acts, will set in motion the motive power of the vehicle. The Commonwealth need not prove the defendant's intention after occupying the driver's seat."

[11]We also reject the defendant's argument that "a stopped engine instruction" was required because the engine was stopped, and the stop was not incidental to the operation of the vehicle. See *Commonwealth* v. *Cavallaro*, 25 Mass. App. Ct. 605, 609 (1988), quoting from *Commonwealth* v. *Henry*, 229 Mass. 19, 22 (1918) (operation under G. L. c. 90, § 24, includes "at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation"). Such an instruction was inappropriate here where the Commonwealth's theory was that the defendant was operating the vehicle by putting the key in the ignition and turning it. This theory did not depend on any previous operation of the vehicle.

[12]The defendant admitted at trial that he had consumed at least ten "white Russian" drinks that evening and was "highly intoxicated." Furthermore, the arresting officer reported that the defendant smelled very strongly of alcohol, had slurred speech, was unsteady on his feet, and had glassy, bloodshot eyes.

[13]The arresting officer testified that the vehicle was parked on the street in front of a restaurant.

The evidence viewed in the light most favorable to the Commonwealth shows that the defendant was found asleep in the driver's seat "slumped over the wheel of the van holding a roast beef sandwich in his hands, with sauce dripping down his hand." The defendant's feet were "right in front of him." The vehicle's dashboard was illuminated. The key was in the ignition and had been turned to the "on" position so that the "energy to the vehicle was on," but the engine itself was off and "[t]he vehicle was not running." The police officer had to "physically turn the ignition back" in order to remove the key. The police did not observe anyone else in the van at the time of arrest. Viewed as a whole, the evidence was sufficient to support a finding that the defendant, while sitting in the driver's seat of the vehicle, put a key in the ignition and turned it to the "on" position. See *Commonwealth* v. *Cabral*, 77 Mass. App. Ct. 909, 909 (2010) ("Circumstantial evidence may be exclusive evidence of operation of a motor vehicle, a required element of OUI"), citing *Commonwealth* v. *Petersen*, 67 Mass. App. Ct. 49, 52 (2006), and *Commonwealth* v. *Rand*, 363 Mass. 554, 562 (1973).

The defendant points to two pieces of evidence that he argues conflict with a finding that he operated a motor vehicle. First, the defendant cites testimony by the defendant and the arresting officer that the defendant, upon being awakened by the police officer, told the officer that the officer did not have the vehicle's keys. The defendant testified that, after he moved to the driver's seat and began eating his food, he did not remember what happened until the police officer woke him up. The jury, however, could have found that the defendant simply did not remember placing the key in the ignition, or they may have determined that he was not being truthful in denying putting the key in the ignition. Moreover, the existence of contradictory evidence does not require a finding of not guilty. See *Commonwealth* v. *Pike*, 430 Mass. 317, 323-324 (1999). Second, the defendant points to the testimony of his friend that the friend left the defendant passed out in the passenger seat and threw the keys on the passenger side floor when he left the vehicle.[14] Even if the jury credited this testimony, it does not require a finding of not

---

[14]The defendant also argues that the Commonwealth failed to meet its burden by not introducing sufficient evidence that the defendant's friend was

guilty because the jury could reasonably have inferred that the defendant, who admitted moving from the passenger seat into the driver's seat, picked up the key and put it in the ignition when he moved to the driver's seat.

2. *Other issues.* A. Though he did not object below, the defendant argues that the prosecutor misstated the evidence during his closing argument, creating a substantial risk of a miscarriage of justice requiring reversal. We disagree. The prosecutor's argument disputing the defendant's characterization that he was the victim of a conspiracy by the police officers was an appropriate response to defense counsel's argument that implied such a conspiracy. See *Commonwealth* v. *Duguay,* 430 Mass. 397, 404 (1999). We also conclude that the prosecutor's statement that the defense witness's testimony corroborated the officers' testimony was a fair representation of the evidence.

B. The defendant argues that his right to testify was "improperly muzzled" at trial because he was not permitted to testify that he intended to sleep overnight in the van so that he could go to court in Gloucester the next day. The defendant, however, was permitted to elicit testimony from the defendant's friend that the defendant said he had to work early in the morning and planned to sleep in the van overnight. Furthermore, the record supports the conclusion that the defendant accepted his attorney's strategic advice not to testify during his examination about his plans to sleep in the van because such testimony might open the door to evidence of prior convictions of driving under the influence. See *Commonwealth* v. *Finstein,* 426 Mass. 200, 203-204 (1997).

C. Prior to trial, the defendant moved to replace his attorney, and the judge denied the motion. The record reflects that as soon as the judge became aware of a conflict between the defendant and his counsel, the defendant was provided an opportunity to explain his reasons for wanting to remove his attorney. The judge did not abuse his discretion in denying the defendant's

---

not the person operating the vehicle. See *Commonwealth* v. *Boothby,* 64 Mass. App. Ct. 582, 582-583 (2005) (police arrived at scene after accident and multiple people claimed that they were driving the car at the time of the accident). *Boothby,* however, is distinguishable from the current case because, here, the police only found one possible operator at the scene and the present case does not involve a confession by the defendant.

motion where (1) this trial counsel was the defendant's third attorney; (2) the case was two years old; (3) although the defendant was upset with his attorney for arguing a motion for a new trial on his behalf, but without the defendant's presence, the defendant's presence would not have affected the outcome of that motion for a new trial; and (4) the defendant merely complained of something that any lawyer who represented him "who had any competence at all would do." See *Commonwealth v. Tuitt*, 393 Mass. 801, 804 (1985).

D. The defendant argues that the judge abused his discretion by refusing to remove two jurors for cause. We disagree. With respect to each of the complained-of jurors, the judge dispelled any concerns about the juror's bias through follow-up questioning, in which the jurors said they would consider all the evidence to determine whether a police officer was telling the truth in the event that the officer's testimony was challenged. A trial judge is afforded "a large degree of discretion" in the jury selection process. *Commonwealth v. Seabrooks*, 433 Mass. 439, 442-443 (2001), quoting from *Commonwealth v. Vann Long*, 419 Mass. 798, 808 (1995). "Where, as here, a judge has explored the grounds for any possible claim that a juror cannot be impartial, and has determined that a juror stands indifferent, [the court] will not conclude that the judge abused his discretion by empanelling the juror unless juror prejudice is manifest." *Commonwealth v. Seabrooks, supra* at 443. No such prejudice was manifest here.

E. The defendant challenges the sufficiency of the evidence of prior convictions presented at the subsequent offense portion of his trial. Reviewing the issue under the familiar standard of *Commonwealth v. Latimore*, 378 Mass. at 676-678, we conclude that the defendant's contention is without merit. First, there was ample evidence that the defendant was the person who had been convicted of similar offenses once in 1986 and twice in 1988. See *Commonwealth v. Bowden*, 447 Mass. 593, 602 (2006) ("[Registry of Motor Vehicles] records, which contained more particularized identifying information . . . , also reflected the offenses and the fact that they were the defendant's"). See also *Commonwealth v. Maldonado*, 55 Mass. App. Ct. 450, 458-460 (2002), *S.C.*, 439 Mass. 460 (2003); *Commonwealth v. Olivo*,

58 Mass. App. Ct. 368, 372 (2003). Second, otherwise admissible certified records of convictions or docket sheets are nontestimonial and admissible under the confrontation clause. *Commonwealth* v. *Weeks*, 77 Mass. App. Ct. 1, 5 (2010). Finally, the judge's instructions to the jury with regard to the prior convictions were proper where the judge simply instructed the jury that the documents in question were OUI convictions and reminded the jury that the Commonwealth still had the burden to prove that the defendant was the person who had committed these previous offenses.

F. There is no merit to the defendant's contention that he was denied his right to speedy trial. Pursuant to Mass.R.Crim.P. 36(b)(1)(C), 378 Mass. 910 (1979), "a criminal defendant who is not brought to trial within one year of the return day in the court in which the case is awaiting trial is presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay." *Commonwealth* v. *Montgomery*, 76 Mass. App. Ct. 500, 502 (2010). The return day here was March 8, 2005. The defendant's trial began on January 23, 2007, 686 days later. "The delay may be excused by a showing that it falls within one of the '[e]xcluded [p]eriods' provided in rule 36(b)(2), or by a showing that the defendant acquiesced in, was responsible for, or benefited from the delay." *Commonwealth* v. *Spaulding*, 411 Mass. 503, 504 (1992). Of the 686 days between those two dates, the docket sheet and documents filed in support of or opposition to the defendant's motion to dismiss show that many days are excluded from the calculation. Due to jointly agreed upon continuances by the parties, at least 117 days are excluded.[15] See *Barry* v. *Commonwealth*, 390 Mass. 285, 298 (1983). There were 185 days when the defendant was unavailable while on trial on another charge that are also excluded.[16] See Mass.R.Crim.P. 36(b)(2)(A)(iii), 378 Mass. 910 (1979). Finally, the defendant's

---

[15]This figure includes (1) ninety-one days between March 30, 2005 (the first scheduled pretrial hearing date), and June 29, 2005 (the actual date of the pretrial hearing); and (2) twenty-six days between August 19, 2005 (the first scheduled date for the final pretrial hearing), and September 14, 2005 (the actual date of the final pretrial hearing).

[16]The defendant's trial on an unrelated charge began on October 5, 2006. The excluded period extends until fourteen days after sentencing. See Mass. R.Crim.P. 36(b)(2)(A)(iii). Due to a mutually agreed-upon continuance, a

motion to dismiss, which was filed on December 13, 2006, and decided on January 10, 2007, also tolled the running of the rule 36 time for twenty-nine days. See *Commonwealth* v. *Spaulding,* 411 Mass. at 505 n.4. In total there were at least[17] 331 days that were excluded from the 686 days between arraignment and trial, meaning that fewer than 365 days remain to count against the Commonwealth. Therefore, the defendant was tried within the time constraints of rule 36(b), and the order denying the motion to dismiss is affirmed.[18]

*Judgment affirmed.*

---

change in counsel between the bifurcated portions of the trial, and another delay between the second portion of the trial and sentencing, the defendant was sentenced on March 24, 2006. Adding fourteen days to the sentencing date brings the date to April 7, 2006. Thus, the total excludable period for the unrelated charge is 185 days from October 5, 2006, to April 7, 2006.

[17]Having identified a sufficient number of excluded days to confirm compliance with the requirement for a speedy trial, we do not compile a complete list of all excluded days.

[18]The defendant also appeals from the denial of his pro se motion to dismiss under G. L. c. 276, § 35. Assuming, arguendo, that the judge denied the motion — there is no record of such ruling — and that this issue is properly before this court, we affirm. General Laws c. 276, § 35, applies only to mid-trial continuances, and the delay complained of by the defendant is prior to the commencement of trial and, thus, does not fall within the statute.