SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. MICHAEL J. WURTZBERGER

 
 Docket:
 SJC-13722
 
 
 Dates:
 April 11, 2025 – June 24, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Motor Vehicle, Operating under the influence, Operation. Intoxication. Evidence, Intoxication, Intent. Intent.
 
 

  
      Complaint received and sworn to in the Falmouth Division of the District Court Department on September 13, 2021.
      The case was tried before Lisa F. Edmonds, J.
      After review by the Appeals Court, 104 Mass. App. Ct. 558 (2024), the Supreme Judicial Court granted leave to obtain further appellate review.
      Genevieve K. Henrique (Matthew J. Schmitt also present) for the defendant.
      Rose-Ellen El Khoury, Assistant District Attorney, for the Commonwealth.
      WENDLANDT, J.  The defendant was found behind the wheel of a large automobile.  The vehicle was parked on a public way, the key was in the ignition, and the radio was on, although the engine was not running.  The defendant's ability to drive was impaired by alcohol.  This case presents the question whether the evidence was legally sufficient to show that the defendant "operated" the vehicle while under the influence of intoxicating liquor (OUI) in violation of G. L. c. 90, § 24 (1) (a) (1) (OUI statute).  We conclude that it was and affirm the defendant's convictions.
      1.  Background.  a.  Facts.[1]  On a mid-September afternoon in 2021, a Bourne police officer was dispatched to one of the town's municipal lots in response to a call from a resident who reported that a rental van had been parked in the lot for several days and nights.  The caller, who resided near the lot, observed two men sleeping in the van and urinating in the lot.[2]
      The van was parked in the back right corner of the lot, near a tree.  The officer approached the vehicle and observed the defendant, Michael J. Wurtzberger, in the driver's seat.[3]  The key was in the ignition, and the vehicle's radio was on.
      An "almost overwhelming" odor of alcohol emanated from the defendant's breath.  The defendant's eyes were "red, bloodshot and glassy," and "his speech was slurred and thick."  The officer saw a half-empty "handle"[4] of vodka in the center console cupholder and an empty handle of vodka next to the defendant's seat "in almost the floorboard area."  In response to the officer's inquiry, the defendant stated that he had consumed four beers about an hour before the officer's arrival.
      The officer asked the defendant to get out of the van; however, the van was parked so close to the tree that the defendant was unable to open the door enough to do so.  The officer suggested that the defendant climb over the center console to the passenger's side door.  The defendant explained that he could not do so because he had recently had spinal fusion surgery.  The officer asked the defendant to "put the vehicle in drive" and "roll forward several feet only, just enough . . . to allow the door to clear the tree so that he could exit."  The defendant did so.
      No longer obstructed by the tree, the defendant got out of the vehicle at the officer's renewed request; the defendant nearly fell in the process.  The defendant had difficulty standing and walking and was unable to correctly perform any of three field sobriety exercises.[5]  Opining that the defendant was "highly impaired," the officer placed the defendant under arrest.
      b.  Procedural history.  In May 2022, the defendant was tried in a bifurcated trial for OUI, fifth offense, in violation of G. L. c. 90, § 24 (1) (a) (1).  The defendant moved for a required finding of not guilty following the close of the Commonwealth's case-in-chief, and at the conclusion of all evidence.  The trial judge denied both motions, and the jury found the defendant guilty of OUI.  Following a bench trial, the judge then found the defendant guilty of the fifth-offense portion of the charge.  The defendant pleaded guilty to an additional charge, OUI with a license suspended for OUI, in violation of G. L. c. 90, § 23.[6]  The defendant was sentenced to serve a total of three and one-half years in a house of correction.
      In a thorough and well-reasoned decision, the Appeals Court affirmed the defendant's convictions.  See Commonwealth v. Wurtzberger, 104 Mass. App. Ct. 558 (2024).  We allowed the defendant's timely application for further appellate review limited to whether the evidence was sufficient to show that the defendant operated the van while intoxicated.
      2.  Discussion.  We assess the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted).  Commonwealth v. Strong, 495 Mass. 119, 126 (2024), quoting Commonwealth v. Kapaia, 490 Mass. 787, 791 (2022).[7]  "Proof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence, . . . and the inferences a jury may draw need only be reasonable and possible and need not be necessary or inescapable."  Kapaia, supra, quoting Commonwealth v. West, 487 Mass. 794, 800 (2021).
      Relevant to the present appeal, G. L. c. 90, § 24 (1) (a) (1), provides:
"Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle . . . while under the influence of intoxicating liquor . . . shall be punished" (emphases added).
To sustain a conviction of OUI, the Commonwealth must prove that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while impaired by the influence of intoxicating liquor.  Commonwealth v. AdonSoto, 475 Mass. 497, 509 (2016).  On appeal, the defendant maintains that the evidence of operation was insufficient because "[t]here was no evidence that the defendant was intoxicated at th[e] time that the vehicle was last moved."  We disagree.
      Nearly a century ago, we explained that,
"[a] person operates a motor vehicle within the meaning of G. L. c. 90, § 24, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle.  The words of the statute 'Whoever upon any way operates a motor vehicle' include the setting in motion of the operative machinery of the vehicle as well as the driving of the vehicle under the power of the motor machinery."[8]
Commonwealth v. Uski, 263 Mass. 22, 24 (1928).  The breadth of this construction reflects the Legislature's intent to prohibit intoxicated persons from getting behind the wheel of a vehicle and manipulating the operative machinery of the vehicle.  Id. ("operates" includes "the setting in motion of the operative machinery of the vehicle").
      Consistent with this purpose as reflected in our construction of "operates," we have concluded that an intoxicated person need not have moved the vehicle to violate the statute; instead, we have explained that "a vehicle may be operated when standing still."  Commonwealth v. Clarke, 254 Mass. 566, 568 (1926), citing Commonwealth v. Henry, 229 Mass. 19 (1917).  See Commonwealth v. McGillivary, 78 Mass. App. Ct. 644, 646-647 (2011).  In view of the broad deterrent purpose of the statute, we also have determined that "[t]o operate a motor vehicle upon a way in violation of the statute, it is not necessary that the engine should be running."  Clarke, supra.  Thus, in Clarke, we concluded that the evidence of operation while intoxicated was sufficient even though the defendant, after getting into the driver's seat and concluding he had consumed too much liquor to drive, decided to leave his automobile parked "just where it was" with the engine off.  Id. at 567.  He did, however, throw "the clutch over from the reverse to neutral."  Id.  This manipulation of the automobile's mechanical machinery -- shifting gears -- was sufficient evidence of operation while intoxicated, we concluded, even though, at the time the defendant shifted the gears, the automobile was standing still.  Id. at 568.[9]
      Applying our jurisprudence regarding the breadth of "operates," we reject the defendant's argument that the Commonwealth was required to prove that he was intoxicated when he last moved the van to the location near the tree.  We have understood for more than a century the statute to be "broad enough to include automobiles at rest, as well as in motion" because the hazard to public safety that intoxicated operators pose extends beyond drivers of moving vehicles.  Cf. Henry, 229 Mass. at 22-23.
      We turn to the defendant's contention that the evidence that the key was in the ignition and turned sufficiently to engage the van's battery and provide electrical power to the radio shows only that he was using the van "as a stationary platform."  To begin, the evidence does not support the use of the van as a stationary platform.  The defendant was seated behind the wheel while the driver's side door was blocked by a tree, preventing him from entering or exiting the vehicle, and the defendant's immobility prevented him from moving within the van.  The record thus supported a reasonable inference that the defendant recently had moved the van and was not using the van as a stationary platform.
      More importantly, however, evidence of operation is sufficient once an individual in the driver's seat of a vehicle intentionally performs "any act," such as turning the ignition key, that "alone or in sequence will set in motion the motive power of th[e] vehicle," regardless of whether an individual intends simply to sit in the driver's seat and use a vehicle as a stationary platform.  Uski, 263 Mass. at 24.  See id. at 24-25 ("The question for the jury was what did the defendant do as shown by the evidence, and not what he secretly intended to do with the automobile"); McGillivary, 78 Mass. App. Ct. at 646.  If the individual is intoxicated at the time he performs this step, the evidence of operating while intoxicated is sufficient to withstand a motion for a required finding of not guilty.  And, if the individual takes these measures and then proceeds to become intoxicated from his driver's seat post, the result is unchanged; in other words, after the defendant here turned the key, he continued to operate the vehicle and, as detailed infra, the evidence of his intoxication while he was thus operating the vehicle was sufficient.
      This conclusion is bolstered by the purpose of the OUI statute to deter individuals from mixing intoxication and motor vehicles "for the protection of travellers upon highways," Clarke, 254 Mass. at 568; the OUI statute "must be read with reference to [this] manifest intent and spirit," Henry, 229 Mass. at 22.  "[T]he public hazard contemplated by G. L. c. 90, § 24, extends beyond intoxicated drivers of moving vehicles."  Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994).  "Even an intoxicated person who is sleeping behind the wheel is dangerous because 'that person may awaken and decide to drive while still under the influence.'"  McGillivary, 78 Mass. App. Ct. at 647, quoting State v. Kelton, 168 Vt. 629, 630 (1998).  The statute seeks "to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers."  Sudderth, supra, at 320-321, quoting State v. Ghylin, 250 N.W.2d 252, 255 (N.D. 1977).
      The Appeals Court's decision in McGillivary is instructive.  There the Appeals Court determined that evidence of operation while intoxicated was sufficient where the defendant was slumped over the steering wheel of his automobile, the keys were in the ignition, and the electricity was on, although the engine was not.  McGillivary, 78 Mass. App. Ct. at 645, 647-648.  There was no evidence from which the jury could infer that the defendant had driven his automobile while he was intoxicated.  Id. at 645.  Nevertheless, the Appeals Court concluded that turning the key in the ignition to the "on" setting could be found by a jury to be a mechanical step -- the first in a sequence of steps that would set the vehicle's engine in motion -- that would, thus, constitute operation.  Id. at 648.[10]
      Here, the defendant was physically incapable of moving from one seat to another in the van and was intoxicated in the driver's seat with the key in the ignition and the radio on.  On this record, the jury could reasonably infer that the defendant intentionally turned the key –- a mechanical step that "alone or in sequence will set in motion the motive power of th[e] vehicle."  Uski, 263 Mass. at 24.  And because the defendant was intoxicated in the driver's seat while the key remained so turned, there was sufficient evidence that he operated the vehicle "while under the influence of intoxicating liquor" (emphasis added).[11]  G. L. c. 90, § 24 (1) (a) (1).
                                          
Judgments affirmed.
footnotes

          [1] Because the defendant challenges the sufficiency of the evidence, we set forth the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Strong, 495 Mass. 119, 120 (2024).
          [2] The record does not contain information as to the timing of this call relative to the officer's arrival at the lot.
               [3] A second person was seated in the passenger seat when the officer approached.
               [4] "Handle" is slang for a 1.75-liter bottle of alcohol.  See King v. Commonwealth, 513 S.W.3d 919, 924 (Ky. 2017).
               [5] When asked to recite the alphabet, the defendant paused after the letter "T" and asked whether the officer wanted him to "recite the rest."  The defendant then concluded with "L, M, X, R, Y, Z."  When instructed to count down from fifty to thirty, the defendant instead counted up into the sixties, stopped, acknowledged that the officer had asked him to count down, and proceeded to do so incorrectly.  When instructed to stand heel-to-toe for the nine-step walk and turn test, the officer again had to prevent the defendant from falling.
               [6] A charge of operating a motor vehicle with a license suspended for OUI, see G. L. c. 90, § 23, was dismissed at the Commonwealth's request, and the judge found the defendant not responsible as to the charge of possessing an open container of alcohol in a motor vehicle, see G. L. c. 90, § 24I.
               [7] Because the defendant did not offer evidence in rebuttal regarding the "operate" element of G. L. c. 90, § 24 (1) (a) (1), we assess whether the evidence was sufficient at the close of the Commonwealth's evidence.  See Kater v. Commonwealth, 421 Mass. 17, 20 (1995) (when "evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect," we also must consider sufficiency of evidence at close of all evidence).
          [8] The defendant urges us to reconsider our construction of "operates" under the OUI statute in view of technologies permitting a vehicle to be turned on without a key or even from outside the vehicle.  Those features are not before us, and we decline to address such technologies in the abstract.
          [9] The defendant's vehicle in Clarke, 254 Mass. at 567, was parked on an incline and, when the defendant shifted into neutral, the vehicle rolled forward into another vehicle.  The facts in Clarke exemplify one of the dangers a standing vehicle with its engine off may pose if operated by an intoxicated individual.  But the fact of the vehicle's movement was a consequence, not a necessary element, of the defendant's operation.  See id. at 568 ("Whether the defendant's automobile was operated . . . is not to be determined by the distance the vehicle moved").
          [10] Our sister jurisdictions also have concluded that the "operates" element of their counterpart OUI statutes was met in similar circumstances.  See generally, e.g., State v. King, 346 Conn. 238, 276-277 (2023) ("the presence of a key in the ignition supports a finding of operation"); State v. Haight, 279 Conn. 546, 553 (2006) (inserting key into ignition constitutes operation because doing so, "in sequence with other steps, will set in motion the motive power of the vehicle" [quotation and citation omitted]); State v. Kelton, 168 Vt. 629, 630 (1998) (defendant who "entered his vehicle and put the key in the ignition" operated vehicle).
               [11] Contrary to the defendant's argument, the Appeals Court's decision in Commonwealth v. Plowman, 28 Mass. App. Ct. 230 (1990), which concerned the appropriateness of a jury instruction, does not support his contention that the evidence of operation in this case was insufficient.  There, an errant jury instruction required the jury to find that the intoxicated defendant operated the vehicle despite testimony that the passenger had been in the driver's seat, intoxicated with the engine running, when the defendant, having found her in that state, pushed her into the passenger's seat and placed himself in the driver's seat to prevent her from driving while intoxicated.  Id. at 231-232.  If the jury found the testimony to be true, they would have been permitted to find that the defendant had not himself intentionally operated the vehicle.  Id. at 234.